## R. W. Merrell et al. v. Viola Moore et al.

### Decided June 29, 1907.

**1.—Abandonment of Wife—Community Property.**

Where a wife who has been abandoned by her husband marries a second time under the mistaken but honest belief that her first husband had obtained a divorce from her, she does not by such marriage and cohabitation forfeit her right to share in the community property acquired by the first husband during the existence of the marriage relation between them.

**2.—Marriage—Duress.**

Where it appeared that a man, after arrest for seduction under promise of marriage, in company with the officer making the arrest procured a marriage license, returned to the bedside of the woman and in the presence of witnesses married her and remained with her a month thereafter, the evidence was not sufficient to sustain a plea of duress.

**3.—Appointment of Receiver.**

In suit by a married woman for her interest in community property, evidence considered and held sufficient to authorize the appointment of a receiver

Appeal from the District Court of Dallas County. Tried below before the Hon. Thos. F. Nash.

*Hilbrant & Scott, Marcus M. Parks* and *H. W. Peck,* for appellants.

*Young & Johnson* and *Wendell Spence,* for appellees.

TALBOT, ASSOCIATE JUSTICE.—This is a suit instituted by Mrs. Viola Moore, joined by her husband, Wilson Moore, against R. W. Merrell and J. E. Sapaugh, as individuals and as the independent executors of the estate of J. B. Merrell, deceased, with whom are joined their respective wives, the unknown heirs of J. B. Merrell, deceased, all nonresidents of the State of Texas, and also Lee J. Hayes, ———— Stone and Jack Woods, residents of Dallas County, Texas, to recover, as her community interest one-half of certain personal property, consisting of saloon fixtures, business, etc., located in said Dallas County, of about the value of six thousand dollars, and other property. Mrs. Moore alleges that she and J. B. Merrell were legally married in the State of Arkansas, in the year 1889, and that she continued to be his lawful wife until his death in December, 1906; that all the property described in her petition was acquired by the said J. B. Merrell while the marriage relation existed between them, and was their community property; that J. B. Merrell left a will in which he treated all of said property as his individual property, and devised the same to the defendants named, other than Hayes, Stone and Woods. It was further alleged that by his will the said J. B. Merrell appointed the defendants, R. W. Merrell and J. E. Sapaugh, executors without bond, and provided that no action should be had in the Probate Court under his will, other than the filing of an inventory, appraisement and list of claims; that said will had been probated in the County Court of Dallas County, Texas, and the said R. W. Merrell and J. E. Sapaugh confirmed as the executors thereof; that they had taken possession of all of said property but had placed defendants Hayes, Stone and Woods in actual control and management of the saloon property and business, and through them said business was being continued and conducted; that all the defendants denied the interest of the plaintiff, Mrs. Moore, in and to said property, contested her right thereto and excluded her therefrom; that said defendants were insolvent and were converting the property into money and the said executors were about to sell or otherwise dispose of all of the property in Dallas County and distribute the proceeds among the beneficiaries named in the will of J. B. Merrell and remove the same and its proceeds out of the State of Texas, leaving plaintiff without remedy. She prayed for an injunction, restraining the defendants from disposing of the monies and property of the estate, and that a receiver be appointed to take charge of all the property pending the litigation, and that ·upon a final hearing the one-half interest in said property and money be established in plaintiff as her separate property, and that the property be divided in accordance with the true interest of all concerned. The executors, Merrell and Sapaugh, answered the rule to show cause why a receiver should not be appointed, and upon a hearing before the court it was adjudged that plaintiff was entitled to the injunction and the appointment of a receiver as prayed for, and the receiver

was accordingly appointed. From this order the executors have appealed.

There is testimony tending to establish the following material facts: The maiden name of the plaintiff, Mrs. Viola Moore, was Viola Stewart; she was left an orphan at an early age and was raised as a member of the family of her older brother, Dr. J. H. Stewart, in Howard County, Arkansas. While a member of her brother's family she became engaged to be married to J. B. Merrell, who was then attending a medical school at Little Rock. Viola became pregnant, and on May 1, 1889, was delivered of a male child. Three days later J. B. Merrell was arrested by Thomas Holt, deputized for that purpose, upon a charge of having seduced Viola under a promise of marriage, and in company with Holt went to the county seat of Howard County, procured a marriage license, returned to the bedside of Viola and in the presence of her brother's family, some of their neighbors and Holt, married her. The marriage ceremony was performed by a minister of the gospel and under the marriage license procured by Merrell, which had been regularly issued by the county clerk of Howard County. The said child born to Viola was recognized and admitted by J. B. Merrell to be his son. About a month after the marriage, and after having carefully nursed Viola through her confinement and sickness Merrell left her and the child at Nashville, Arkansas, with the statement that he was going to prepare a home for them. He went to Galveston, however, from which place he wrote Viola a letter, protesting the most ardent love for her, but indicating that he had abandoned her and the child. In this letter he stated that he would go to New York, and from there he did not know where, but that when he got settled down to business he would send money to help support her and the child. After this Merrell never communicated with his family, but abandoned his wife and child, leaving them to their own resources or to the charity of their relatives. In December, 1890, Dr. Stewart brought them with him to Texas and located in Erath County. Mrs. Viola Merrell by her own labor supported herself and child and educated the latter. J. B. Merrell appeared at Dallas about the year 1896, and embarked in the saloon business, in which business he remained until his death, in December, 1906. At his death he left a will, in which he appointed R. W. Merrell and J. E. Sapaugh independent executors, free of the control of the Probate Court, and in which he devised all the property acquired and left by him to the defendants in this case, other than Hayes, Stone and Woods. The will was probated, the said executors qualified by taking the oath prescribed by law. The executors are both poor men, who reside in Arkansas, and R. W. Merrell is himself indebted to the estate in a large amount. The executors turned over the saloon business to Hayes, who, with the assistance of Stone and Woods as bartenders, was continuing the saloon business at Dallas, Texas. Hayes was under no bond to the executors, and they required no regular reports of him. The executors know nothing of their own knowledge in regard to the estate, or of its management; nor of what Hayes is doing with money derived from the business. It was the intention of the executors to sell the

property and distribute the proceeds among the parties named in the will, not recognizing Mrs. Viola Merrell as having any interest therein. The executors have shipped out from Dallas to Arkansas, where they now are and have all the time resided, all the personal property, other than that connected with the saloon business. $350 of money belonging to the estate was used in the settlement of the claims of Oscar J. Merrell, son of Viola and J. B. Merrell, upon his contest of the probate of the will, of which $150 was awarded to his attorneys.

Mrs. Viola Merrell received information by letter from one of the old friends of the Merrell family in Arkansas, that J. B. Merrell had obtained a divorce from her. About a year after receiving such information a marriage ceremony was performed between herself and one Wilson Moore, of Erath County. Mrs. Viola Merrell entered into this marriage ceremony believing that her former husband, J. B. Merrell, had been divorced from her. After the death of J. B. Merrell she learned that he had never been divorced from her, which was true, and thereafterward, under the advice of an attorney of Stephenville, she was again married to her present husband, Wilson Moore. J. B. Merrell and his wife, Viola Merrell (now Viola Moore), were never divorced; their marriage, contracted in May of 1889, remained undissolved until dissolved by his death in December, 1906. The property in controversy was acquired by J. B. Merrell by onerous title during the existence of the marriage.

Appellants contend that the District Court erred in appointing a receiver herein, and urge, substantially, the following propositions: (1) that the undisputed evidence shows that all the property acquired by J. B. Merrell, and which he owned at the date of his death, was acquired by him after the marriage of the plaintiff, Mrs. Viola Moore, to Wilson Moore, and that such marriage precluded Mrs. Moore from recovering any interest in or part of said property; (2) that the undisputed evidence adduced showed, that the said J. B. Merrell was, by reason of both duress of imprisonment and duress *per minas* forced, in the year 1889, to marry Mrs. Moore, then Viola Stewart, and that he did not thereafter live with the said Viola as his wife; that after said marriage the said Viola contributed nothing to the accumulation of the property in controversy, and during the time of its accumulation she lived and cohabited with Wilson Moore as his wife; (3) that the undisputed evidence showed no ground for the appointment of a receiver, taking the custody, control and disposition of the estate from the executors appointed under the will.

The evidence does not, perhaps, establish conclusively that all the property in which the appellee, Mrs. Moore, claims an interest was acquired after her marriage to and during her cohabitation with Wilson Moore; but if that fact be conceded, still we are of the opinion that she did not, under the circumstances shown, by such marriage and cohabitation, forfeit her right to share in the community property acquired by the efforts of J. B. Merrell during the existence of the marriage relation between the said Merrell and Mrs. Moore. No case directly in point has been cited, and it is doubtless true today, as when the well expressed opinion in Routh v. Routh, 57 Texas, 589, was written, that "neither by dicta or decision has it

yet been determined what acts, facts or circumstances, while the duties, disabilities and burthens of the contract still attach to her, shall divorce the wife from the rights of property she acquired by the same contract." The "important boundary line in the separation of these important rights" was not established in the case referred to, but the principle, that the wife's right to an equal interest in the community property continues until that right is in some mode recognized by the law forfeited, and that "the existence merely of cause for divorce does not necessarily impair her marital rights to property which coexists with the contract of marriage, irrespective of any mere balance sheet to be struck between the husband and wife, on account of their respective moral or conjugal merits or demerits," is clearly announced. The marriage relation when once established continues until dissolved by death or judicial decree, and all property acquired by either the husband or the wife during the marriage, except such as is acquired by gift, devise or descent, is by statute made their common property. This community of interest is not made to depend upon the acquisition of the property during the time the parties actually live together, nor upon the fact that there was an equal amount of labor or capital contributed by the husband and wife in its accumulation. It is the property acquired "during the marriage" (with the exception stated) that "shall be deemed the common property of the husband and wife, and the right to an equality of enjoyment and division thereof, regardless of whether the one or other has contributed little or nothing in its acquisition," is well recognized. Therefore, had the separation of appellee from J. B. Merrell been by mutual consent it would not have affected her right in the community property, although derived solely from the efforts of the said Merrell. But such even does not appear to have been the character of their separation. On the contrary, as has been seen, the evidence tended to show a wilful and deliberate abandonment of plaintiff and her child by Merrell under the pretense of providing a home for them, which he failed to do, and thereafter left their support to the unaided efforts of the mother and the charity of her relatives. Upon these resources she was forced to rely in the struggle for the support of herself and the child until December, 1900, when, having heard through an old friend of the family that the said Merrell had obtained a divorce from her, and believing that to be true, she contracted a putative marriage with her present husband, Wilson Moore. To now hold, in accordance with the contention made in behalf of appellants, that by the putative marriage and the cohabitation which followed, Mrs. Moore forfeited her share of the community property acquired by Merrell during the existence of her marriage with him, would be unjust and the inflicting of a punishment not believed to be demanded by the law of this State. If it be conceded that no matter how honestly Mrs. Moore may have believed that she had been divorced from Merrell and that the marriage with Wilson Moore was lawful, that technically and in the eyes of the law her cohabitation with him, in the absence of such divorce was adulterous, still it is believed that since the original fault or wrongdoing is attributable to Merrell, and the circumstances altogether

are such as made her act virtually one of innocence, an exception is presented under which she should be exempt from the punishment which might ordinarily be imposed by law. The case here is essentially different from Wheat v. Owens, 15 Texas, 241, in which it was held that by the conduct of the wife she forfeited her claim to a community interest with her husband in a headright grant. There the wife voluntarily abandoned her husband and lived in conscious, open and shameless adultery with another man. Here the husband, according to the testimony before us, wantonly and cruelly abandoned the wife and ever thereafter, with the exception of one letter written a day or so after such abandonment, failed to communicate with her or contribute anything whatever to her support or the maintenance of his child. This wife, though thus wronged, sought to find the recreant husband and remained true and loyal to her marriage vows, evidently ready to forgive and take him back, until convinced by satisfactory information, that the bonds that bound them had been broken at his instance by a decree of divorcement. If the cohabitation of Mrs. Moore with Wilson Moore, under these circumstances, constituted adultery at all, then we believe, because of her innocence and good faith, it was not of such a character as deprived her of her community interest in the property acquired by J. B. Merrell subsequent to her marriage with the said Moore.

This disposes of the most serious question in the case. In reference to the contention urged that the marriage solemnized between Mrs. Moore and J. B. Merrell in Arkansas was void on account of duress, it is sufficient to say that the evidence did not conclusively establish that said marriage was forced upon Merrell either by duress of imprisonment, menace or threats. There was evidence from which the court might reasonably conclude that this marriage was voluntarily entered into on the part of Merrell in fulfillment of the promise previously made. Besides, the evidence with respect to the living together of appellee and Merrell after the marriage ceremony was performed is believed to be sufficient to support a finding that the said Merrell ratified the marriage and accepted appellee thereunder as his lawful wife.

Nor do we think the undisputed evidence, as contended by appellants, showed no ground for the appointment of a receiver to take charge of the property involved in this controversy during the pendency of the litigation. Mrs. Moore does not occupy the position of a creditor with a claim against the estate of J. B. Merrell, deceased, with the right to require the independent executors under the terms of the statute to give bond. If she had not forfeited her share of the community property she was the absolute owner of one-half of it, and in the absence of community debts to be paid, she would be entitled to a division and the possession of the same. The executors are nonresidents of this State and have committed the custody of the property situated in this State and the management of the saloon business left by Merrell, to other parties, who the evidence tends to show are insolvent. That they not only deny appellee's right to any portion of said property, but have removed a part of it already beyond the limits of the State and were about to dispose of the bal-

ance of it and divide the proceeds between themselves. Our statute provides that a receiver may be appointed by any judge of a court of competent jurisdiction in this State in an action "between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff or any party whose rights to or interest in the property or fund or proceeds thereof is probable, and when it is shown that the property or fund is in danger of being lost, removed or materially injured." By her pleadings and the evidence appellee showed herself entitled to the protection of this statute and the court did not err in the appointment of a receiver over the executors of the will, and appellee's interest in the property, if any, being an undivided interest, the authority of the receiver should not have been limited to the custody of only one-half of it. Whether or not Mrs. Viola Moore has a community interest in the property acquired by the joint efforts of herself and Wilson Moore during the existence of their putative marriage, in which the heirs of J. B. Merrell would have an interest, and if so, whether it should have been placed in the hands of the receiver appointed by the court in this case, are questions which do not affect the correctness of the court's order appointing said receiver, and from which this appeal is prosecuted and need not be discussed or determined. The judgment of the court below is affirmed.

*Affirmed.*