## PEOPLE v. CAMPBELL.

1. Forgery—Criminal Law—Intent.

   Evidence that the respondent, charged with forging a note to conceal misappropriation of funds intrusted to him, failed to return the money is admissible to show intent.

2. Constitutional Law—Forgery—Evidence— Method of Obtaining—Unlawful Searches and Seizures.

   A forged note obtained from the respondent's desk in his absence, without a warrant, may be used in evidence against him to prove the *corpus delicti* without violating his constitutional exemption from being a witness against himself.

3. Same—Criminal Law—Evidence Obtained by Search.

   Securing a note from respondent's desk in his absence is not an unreasonable search and seizure if authorized by a search warrant. 3 Comp. Laws, § 11987; Const. of 1850, Art. 6, § 26.

4. Forgery—Intent—Deceit.

   In a prosecution for forging a note which was retained by the respondent, an attorney who had been intrusted with funds by a client for investment, it was not error to refuse a request to charge that the note must, in order to render the respondent guilty of forgery, have been made with intent to prejudice the rights of some person, as well as to deceive.

5. Same—Instructions to Jury.

   A charge that unless the note was made by respondent and was intended for use in deceiving the client or working a fraud upon her the respondent must be found not guilty is proper.

6. Same—Presumptions—Bills and Notes.

   In a criminal action the presumption that a note was executed on the day of its date is applicable as in civil causes.

Exceptions before judgment from Jackson; Wiest, J., presiding. Submitted November 15, 1909. (Docket No. 168.) Decided March 5, 1910.

Robert Campbell was convicted of forgery. Affirmed.

*Thomas E. Barkworth*, for appellant.

*Albert O. Reece*, Prosecuting Attorney, *Frank L. Blackman*, Assistant Prosecuting Attorney, for the people.

MOORE, J. The defendant was convicted upon an information charging him with the forgery of a note. The date of the alleged offense as charged in the information was January 2, 1903. The proof showed that the paper produced and bearing that date was not seen by any of the witnesses until it was found by Judge Parkinson, a former partner of the defendant, in June or July, 1908. The finding of the paper in the desk of the respondent occurred during his absence, and when his desk had been taken apart by the direction of Judge Parkinson and in the presence of Mr. Cobb, who at that time was the attorney of Pauline Ragotzky. Judge Parkinson testified the purpose of the search was to find the balance of Pauline Ragotzky's papers. He also testified that he then supposed he might have a personal interest in the paper himself, because of his former partnership with respondent, and that Pauline Ragotzky was present, and that they were acting for her, and had no knowledge of any crime, and were not seeking evidence of a crime. No evidence of the use of the note for any purpose by the defendant was offered, except as will appear later. For some years prior to the date of the alleged offense, the respondent had been acting for Pauline Ragotzky, an aged German woman, as an agent for the loaning of her money. About the date averred in the information she had some talk with him about a good loan in Cheboygan county to a Mr. Dodge, and on the date named in the information she drew from the bank $600, and gave it to respondent. He then gave her the name and address of Mr. Dodge, the alleged maker of the note. Defendant told her it was to be a loan on a mortgage. From that time on respondent paid the interest regularly to the complainant, accounting for it as the Dodge loan. She had no further specific con-

versation with respondent relative to it until the spring of 1908, when she went to him and asked him about it. Her version of that conversation will appear later. He told her there was a note, but he did not know where it was. Complainant never saw the note until she saw it in the possession of Mr. Cobb and Judge Parkinson at the time before mentioned.

It is said the court erred in permitting the witness Ragotzky to testify that the respondent never returned the $600 or any part thereof. It is urged it would have no legal effect upon the question of the guilt or innocence of the defendant, but would undoubtedly prejudice the defendant's case before the jury. We think it admissible as bearing upon the question of the intent of the respondent in doing what he did.

It is said the testimony of Judge Parkinson as to the finding of the instrument, and its offer in evidence constitute error. We quote from the brief:

"I contend that the admission of this testimony contravened the constitutional provision that the defendant shall not be compelled to give evidence against himself. The language of the Constitution of 1850 [Art. 6, § 32] is as follows:

"'SEC. 32. No person shall be compelled, in any criminal case, to be a witness against himself, nor be deprived of life, liberty or property, without due process of law.'

"A similar provision is found in the Constitution of the United States. * * * In effect this ruling compelled the respondent to make, through the medium of his papers, an extrajudicial confession of the *corpus delicti*. This confession, according to the authorities both in Michigan and elsewhere, would not, without corroboration, prove the existence of the body of the offense. It certainly was forced from him. Its effect in the case is that of a confession."

In his reply brief counsel further states his position:

"I conceded in my former brief that the paper itself, if competent in the case, would not be rejected because of the method by which it had been obtained, but I sought to

distinguish the case at bar from the cases in which this rule had been enunciated. Here it involves the *corpus delicti*, which depends entirely upon the discovery made by Judge Parkinson at the time the alleged violation of the Constitution occurred. The competency of the note itself depends upon the testimony of the judge. * * * I further contend that it would have been irrelevant and incompetent in advance of other proof of the *corpus delicti*, and its reception would absolutely nullify the constitutional provision protecting a person against being compelled to incriminate himself. This is the crucial point; the illegal search and seizure being a mere incident of the case. There is no evidence in the case tending to incriminate the defendant, save as is disclosed by a forcible exhibition of his private papers and disclosure of the contents of his desk, made in violation of both provisions of the Constitution, and which are as nearly fundamental in our system of jurisprudence as any principles can be. I know of no case involving the precise point we raise."

We have already called attention to the testimony in relation to the circumstances under which the paper was obtained. If the paper was not a forgery, it belonged to Pauline Ragotzky. If it was a forged instrument, section ⫶11987, 3 Comp. Laws, authorizes the issuance of a warrant to search for and seize it. When by virtue of a search warrant the forged instrument is found, it may be used as evidence, section 11990. In this case, while no search warrant was used, if one had been used, it cannot be said that it would be an unreasonable search and seizure within the meaning of article 6, § 26, of the State Constitution.

In *Commonwealth* v. *Dana*, 2 Metc. (Mass.) 329, the court said:

"The possession of lottery tickets, with the intent to sell them, was a violation of law. The defendant's possession, therefore, was unlawful, and the tickets were liable to seizure as belonging to the *corpus delicti*, or for the purpose of preventing further violations of law. * * * There is another conclusive answer to all these objections. Admitting that the lottery tickets and materials were illegally seized, still this is no legal objection to the admis-

sion of them in evidence.   If the search warrant were illegal, or if the officer serving the warrant exceeded his authority, the party on whose complaint the warrant issued, or the officer, would be responsible for the wrong done; but this is no good reason for excluding the papers seized as evidence if they were pertinent to the issue, as they unquestionably were.   When papers are offered in evidence, the court can take no notice of how they were obtained, whether lawfully or unlawfully; nor would they form a collateral issue to determine that question.   This point was decided in *Legatt* v. *Tollervey*, 14 East, 302." ·

In *Siebert* v. *People*, 143 Ill. 571 (32 N. E. 431), is to be found the following language:

" Courts, in the administration of criminal law, are not accustomed to be oversensitive in regard to the sources from which evidence comes, and will avail themselves of all evidence that is competent or pertinent, and not subversive of some constitutional or legal right.   In Greenleaf on Evidence (Redf. Ed.), § 254, it is said:

" 'Though papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered, or otherwise unlawfully obtained, this is no valid objection to their admissibility if they are pertinent to the issue.   The court will not take notice how they were obtained, whether lawfully or unlawfully, nor will it form an issue to determine that question.' "

The question is not a new one in this State.   In *Cluett* v. *Rosenthal*, 100 Mich. 193 (58 N. W. 1009, 43 Am. St. Rep. 446), the same principle was involved.   Justice MONTGOMERY, speaking for the court, said:

" It is not the policy of the courts, nor is it practicable, to pause in the trial of a cause, and open up a collateral inquiry upon the question of whether a wrong has been committed in obtaining the information which a witness possesses.   The cases have gone to great length upon this subject.   In *Legatt* v. *Tollervey*, 14 East, 302, it was held that, upon the offer to prove at the trial of a cause the original record of an indictment and acquittal, or a true copy thereof, such evidence must be received though there was no order of court or fiat of the attorney general allowing the plaintiff a copy of such record, and though the officer who, without such authority, produced the rec-

ord, or gave a copy of it to the party, is answerable for contempt of court in so doing.   This has become a leading case, and is cited in 1 Greenleaf on Evidence, § 254*a*, in support of the doctrine of the text that, though papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered, or otherwise unlawfully obtained, this is no valid objection to their admissibility if they are pertinent to the issue; that the court will not take notice how they were obtained, whether lawfully or unlawfully, nor will it frame an issue to determine that question.   The doctrine is also fully supported by *State* v. *Mathers*, 64 Vt. 101 (23 Atl. 590, 15 L. R. A. 268, 33 Am. St. Rep. 921); *Com.* v. *Dana*, 2 Metc. (Mass.) 329; *Com.* v. *Tibbetts*, 157 Mass. 519 (32 N. E. 910)."

Error is assigned upon the refusal of the court to grant a new trial, in which he stated his reasons at great length. We shall not refer to these assignments, except to say they have been carefully considered, and we think are decided by what we shall say in those assignments of error which we discuss.

The court was requested to give the following:

"*Third.* I charge you that the offense of forgery is the fraudulent intent with which the paper was made, and you must be able to find from the evidence that it was made with the expectation and intention that some person should be defrauded thereby, and in this connection I charge you that the meaning of ' defraud ' is not equivalent to ' deceive,' and that it is not sufficient that the paper was made with intent to deceive any person, but that it must have been made with intent to prejudice the rights of some person, and you must agree upon the person, whose rights were so intended to be prejudiced."

He declined to do so, and charged the jury as follows:

" If the respondent's intention in making the note was to deceive Miss Ragotzky, if she demanded evidence of the loan, and lead her to believe that he had made the loan, and that the note was evidence of it, and to cover up and conceal his false representations in getting the money and his use of it, if he used it, and his failure to make the loan, then the note was a forgery and with intent to defraud,

160 MICH.—8.

and the respondent may be found guilty of forgery, provided you find from the evidence all of the essential facts I have mentioned established beyond a reasonable doubt. * * *

"Now, intent, gentlemen of the jury, is a secret of a man's mind, and unless a man discloses his purpose by words, disclosing his state of mind, what he did it for, then the only way the jury may determine intent is from the acts proven in the case, and the reasonable inferences drawn therefrom.

"So in this case, having in mind all of the evidence, all of the acts, if any, it discloses relating to the making of the note in evidence, it becomes a question for you, gentlemen, to determine the purpose, if any, the respondent had in making this note, in case you find he made it. Did he form the purpose of making this note in order to have it to show to Miss Ragotsky in case she wanted to see evidence of the loan? What was his purpose? Did he get the money from Miss Ragotsky? If so, did he use it for his own purposes, or did he make the loan? If he did not make the loan, then why did he make the note, if he made it? Did he make the note? Is it a false note? When did he make it? It is charged he made it on the 2d day of January, 1903, and, it being so charged, in order to find the respondent guilty of the charge here made, it is necessary for you, gentlemen, to be satisfied from the evidence, beyond a reasonable doubt, that the respondent did make the note at the time alleged.

"*First*, you will take up the question of whether the respondent made the note at the time alleged. If you cannot say he did, and so find from the evidence beyond a reasonable doubt, the case ends, and your verdict will be that of not guilty. If you find he did make the note, that it is a false note, entirely his own work, without any authority from Mr. Dodge to execute it for him, then you come to the question of his purpose and his intent in making it.

"As I said to you before, gentlemen, the question of intent, no witness can come and testify to an intent, because intent is a secret of another man's mind, but the intent, if you reach that question, is to be gathered, if at all, from all the facts disclosed and the circumstances surrounding the doing of the thing charged. If he made the note, and it is a false note, what was his purpose? Was it that he might have it to show to Miss Ragotzky in case she

wanted to see evidence of the loan? Did he have it—did he make it to have it for the purpose of perpetrating a fraud upon her? Did he make it for the purpose of concealing his use of the money? Did he make it for the purpose of satisfying Miss Ragotzky by its production in case she asked to see evidence of the loan, to satisfy her he had made the loan and held Mr. Dodge's obligation? If such was his purpose, if he made the note and it is false, then it would be a fraud upon Miss Ragotzky, and if the note was false, and made by the respondent with the intent of defrauding or working a fraud upon Miss Ragotzky, then all the elements of the crime of forgery are established, and the respondent may be found guilty. In case you cannot so find beyond a reasonable doubt, then the respondent must be found not guilty."

The provisions of the statute are as follows:

"In any case where an intent to defraud is required to constitute the offense of forgery, or any other offense that may be prosecuted, it shall be sufficient to allege in the indictment an intent to defraud, without naming therein the particular person or body corporate intended to be defrauded; and on the trial of such indictment, it shall be deemed sufficient, and shall not be deemed a variance, if there appear to be an intent to defraud the United States, or any State, county, city or township, or any body corporate, or any public officer in his official capacity, or any copartnership or member thereof, or any particular person." Section 11672, 3 Comp. Laws.

We think this phase of the case was fully covered.

Error is assigned upon the refusal of the court to give the following:

"*Eighth.* There can be no presumption drawn as to the time of the transaction from the date of the note. While in some cases there is such a presumption, it is not applicable here."

In 16 Cyc. p. 1072, it is said:

"Facts which usually and regularly coexist in business affairs are assumed, in the absence of evidence to the contrary, to coexist in any particular case. Thus it is assumed * * * that the date on a written instrument is the day of its execution"— citing 8 Cyc. p. 217; 13 Cyc.

p. 727; *Hauerwas* v. *Goodloe*, 101 Ala. 162 (13 South. 567); *Chicago, etc., R. Co.* v. *Keegan*, 152 Ill. 413 (39 N. E. 33); *Lauder* v. *Agricultural Society*, 71 Ill. App. 475; *Holbrook* v. *Zinc Co.*, 57 N. Y. 616, and many other cases.

These authorities support the statement contained in the text.

It is suggested that, while this rule is correct in civil cases it does not hold in criminal cases. As to this phase of the case, the question is whether the note was executed upon the day of its date. If a presumption arises, based upon the usual and common experience of the business world which has value as evidence in a civil case, we cannot see why it should be rejected as of no value in a criminal case. The court allowed the jury to say whether there was evidence to the contrary of this presumption. The case, however, did not rest upon presumption alone. A complaint was made in which the note was described *in extenso*.

Mr. George J. Dodge testified:

"I was present in police court in this city during the examination of Mr. Campbell in the court below. I had some talk with Mr. Campbell at that time in reference to this matter. Mr. Campbell told me he made that note himself, but he never intended to use it against me. He said, 'I made that note myself.'"

Pauline Ragotzky testified in part as follows:

"I had a talk with Mr. Campbell about my papers. I can't give the date. I was made anxious that my loans would be unsafe, so I went to Mr. Campbell, and asked him about it. I wanted him to give me my papers. I told him it was time for me to get acquainted with my own affairs, and he gave me some. Instead of 9 or 14, he gave me 4. I asked the difference. I says, 'This is only 4.' There are so many more. He didn't make any answer at that time, and I simply said, 'Where is the Dodge mortgage?' He said, 'There is no mortgage.' Then I asked him what there was. He told me there is a note. I says, 'Where is the note?' He told me he didn't know where it was. There was nothing said about my having

it, that I can recall. It might have been, but I can't say. Still it might have been that I said no. I never had it. There was very little talk at that time, for Mr. Campbell seemed to be quite excited, and I took the papers and he locked up his desk and went away. I didn't see a thing of any Dodge papers at that time."

Later the paper was found in the manner before described, in an envelope marked "Pauline Ragotzky."

The case was carefully tried. We find no reversible error. The conviction is affirmed.

HOOKER, McALVAY, BROOKE, and BLAIR, JJ., concurred.