## APPEAL OF R. W. RAMMING.

Docket No. 5983.    Promulgated February 18, 1927.

1. Depletion allowances corrected in accordance with admitted errors of the Commissioner.

2. Evidence *held* to establish creation of trust in mineral rights before execution of both the contract to lease and the oil and gas lease on the lands involved.

3. COMMUNITY PROPERTY.—Under statutes of Texas a wife's interest in community income is vested during coverture, and where husband and wife reported their income for 1919 on the community property basis the Commissioner is precluded by section 1212 of the Revenue Act of 1926 from taxing the whole of such income to the husband.

*Harry C. Weeks, Esq.,* for the petitioner.
*Bruce A. Low, Esq.,* for the Commissioner.

This is an appeal from the determination of deficiencies in income taxes for the calendar years 1919 and 1920 in the respective amounts of $6,644.73 and $17,899.64, a total of $24,544.37, of which only a part is in controversy.

In the answer filed by the Commissioner, he admits error in the computation of the tax in certain respects as alleged by the taxpayer and admits that adjustments should be made as follows:

*1919.* (a) A reduction of income of each the taxpayer and his wife of $927.52, representing proportionate part of depletion allowable to the Five Oil Co., a partnership, in which the taxpayer and his wife owned a one-fifth interest.

(b) A reduction of taxpayer's income in the amount of $16,592.59 and of the income of taxpayer's wife in the amount of $5,776.63.

These reductions represent additional depletion allowances of $10,-815.96 against taxpayer's income from oil and $11,553.26 against community income from oil.

*1920.* A reduction of taxpayer's income in the amount of $28,850.05, representing additional depletion allowable.

Of the errors alleged in the petition, there remains in issue only that of whether the taxpayer had made a valid gift of mineral rights in certain property prior to the execution of an oil and gas lease thereon. In an amended answer filed at the hearing the Commissioner asserts that he erred in attributing any income to the wife of the taxpayer and that, under the community property laws of Texas, the entire income is taxable to the husband.

FINDINGS OF FACT.

The taxpayer is an individual residing at Fort Worth, Tex. On December 8, 1919, he and his wife entered into a separation settlement and on January 8, 1920, they were divorced. They had at that time one child, Helen Virginia Ramming, a minor. Upon their separation the taxpayer and his wife created a trust fund, consisting of an interest in an oil and gas lease and Liberty bonds, for the benefit of their minor child. Shortly after the creation of this trust the property covered by the lease was drilled and salt water was struck, which rendered the well and the lease worthless.

Desiring to make further provision for his minor daughter, the taxpayer, by an instrument dated April 2, 1920, placed in trust for the daughter a seven-sixteenths interest in the oil and gas and other minerals in a 49-acre tract of land described by metes and bounds in the trust instrument. This trust, by its terms, was to remain in effect until the beneficiary reached the age of twenty-four years, she being at the time of its creation about four years old. The trustees were empowered to lease or sell the *corpus* of the trust in their discretion, to collect the rents and revenues, and to reinvest the proceeds, all for the benefit of the beneficiary. The only provision for reversion of the property to the taxpayer is in the event of the death of the beneficiary before reaching the age of twenty-four years. J. A. Staley, grandfather of the beneficiary, and C. C. Cabiness, vice president of a Wichita Falls, Tex., bank, were named as trustees.

The trust agreement was signed by the taxpayer and by the trustees therein named. The date of the signatures is given in the instrument as April 2, 1920. All three of the signers acknowledged their signatures before a notary public on April 8, 1920.

By a contract dated April 2, 1920, the taxpayer acting for himself, and J. A. Staley and C. C. Cabiness, designating themselves as

trustees for Helen Virginia Ramming, agreed to execute an oil and gas lease to the 49 acres above mentioned in favor of several individuals named in the contract. The expressed consideration for the lease was $100,000, payable $20,000 upon the approval of abstract of title and the balance in eight notes for $10,000 each, four payable to the taxpayer and four payable to the trustees. Two of these notes, one to the taxpayer and one to the trustees, were payable each year. It was provided that the contract, the initial payment of $20,000, and the lease should be placed in escrow pending submission and acceptance of abstract of title to be obtained by the lessors. The signatures of the parties to this contract are stated therein as having been affixed on April 2, 1920.

On the same date as the previous instruments, April 2, 1920, an oil and gas lease to the 49 acres was executed by the taxpayer and by J. A. Staley and C. C. Cabiness, trustees for Helen Virginia Ramming, as lessors. The taxpayer and Staley and Cabiness acknowledged their signatures to this lease and the capacity in which they acted before a notary public on April 9, 1920. The lease was filed for recording with the clerk of the county court of Wichita County, Texas, on April 21, 1920, at 8:26 a. m.

The trust agreement was executed prior to the execution of both the contract to lease and the lease of the property.

On April 10, 1920, the taxpayer deposited to his credit at a bank in Wichita Falls the cash payment in the amount of $20,000 received under the oil and gas lease and at the same time gave his note for $10,000 to the trustees. He has also borrowed on his note $14,000 from the first trust fund created for his daughter. The notes bear 6 per cent interest. They have been renewed and are due in 1928. The taxpayer has paid, in cash, the interest as it came due on the notes and has paid $4,000 of the principal.

A portion of the income and property involved in this appeal are community income and property of the taxpayer and his wife. The taxpayer has made an agreement to assume liability for his wife's share of the community income for the calendar year 1919.

OPINION.

ARUNDELL: In determining the deficiency for 1920 the Commissioner included in the taxpayer's income the sum of $10,000 which, it is contended by the taxpayer, was received by the trustees of the trust created for his minor daughter. This sum is one-half of the cash payment made for an oil and gas lease on a tract of land owned by the taxpayer. There appears to be no question of the validity of the trust. The dispute arises as to whether the trust

or the contract to lease the land are prior in point of time. The Commissioner contends that the agreement to lease the land was executed prior to the time of the execution of the trust agreement, and that consequently the cash payment of $20,000 was all income to the taxpayer.

Both instruments by their terms purport to have been executed on the same date, April 2, 1920. The acknowledgments of the signers of the trust agreement were taken by a notary on April 8, 1920. In the copy of the agreement to lease which is in evidence the spaces designated for the acknowledgments of the signatures of the parties thereto are blank.

The only witness in the case was the taxpayer, who, while being somewhat uncertain as to the exact date of the execution of the trust agreement, was positive that the agreement was executed prior to the time both the contract to lease and the lease were executed, and this evidence finds support in the recitals contained in the instruments themselves. In both the contract for the lease and in the lease Staley and Cabiness are referred to and sign their names as " Trustees for Helen Virginia Ramming," indicating that not only had the trust arrangement been made but that the trustees had accepted the trust prior to the execution of the contract and lease.

There is also in favor of the taxpayer's claim the presumption that the several instruments were executed in logical order. Jones on Evidence, 1924 ed., states, on p. 53, that—

When different deeds and leases are made bearing date on the same day and the order of the execution does not appear, it will be presumed that they were made in the proper order and to carry out the obvious intent of the parties.

The case of *Fowler* v. *Merrill*, 11 How. 375, involved the question of the date of execution of a mortgage. It was there held (p. 393):

But it must be presumed to have been executed at its date till the contrary is shown * * *.

In *People* v. *Campbell*, 160 Mich. 108; 125 N. W. 42, 45, the rule stated in 16 Cyc., p. 1072, is quoted as follows:

Facts which usually and regularly coexist in business affairs are assumed in the absence of evidence to the contrary to coexist in any particular case. Thus it is assumed * * * that the date on a written instrument is the day of its execution.

The fact that the trust deed was not acknowledged until April 8, 1920, is of little significance in determining the time of its execution and certainly does not operate against its complete effectiveness from the date of execution.

In the case of *McCracken* v. *Sullivan*, (Tex. Civ. App.) 221 S. W. 336, it is held that—

In case of a deed by a party competent to execute it, neither the acknowledgment nor record is necessary to make it a valid and binding obligation * * *.

In *McLane* v. *Canales*, (Tex. Civ. App.) 25 S. W. 29, it is said—

A deed without witnesses or acknowledgment is sufficient to convey land, those formalities being requisite only with respect to registration and notice.

This decision is cited with approval in *Canon* v. *Scott*, 230 S. W. 1042, 1046, and in *Eadie* v. *Chambers*, 172 Fed. 73, 76.

Finding as we do that the trust agreement was executed prior to the contract to lease and the lease, it follows that of the amount of $20,000 paid under the contract only one-half was income to the petitioner and the Commissioner erred in including the entire amount in petitioner's income.

By amending his answer at the hearing of this appeal the Commissioner asserted that he erred in determining that any portion of petitioner's income for 1919 and 1920 should be credited to the wife of the petitioner, thus raising the question of whether a husband and wife domiciled in Texas may report income on a community property basis. The evidence shows that the petitioner and his wife entered into a separation settlement on December 8, 1919. Whether the circumstances surrounding this settlement were such as to render it enforceable and such as to dissolve the community at that date does not appear from the record. It does appear, however, that the Commissioner accepted the settlement as effecting a dissolution of the community at that time, as in determining the deficiency here involved he has attributed no part of the taxpayer's income for any period subsequent to that date to the wife. In the absence of evidence to the contrary, we must accept the Commissioner's finding as to the validity of the separation settlement for the purposes of this case. It thus follows that the Commissioner's claim of error in distributing 1920 income on a community basis is without foundation in fact, as the community had terminated prior to 1920. As to the year 1919, the income of the petitioner and his wife from community property was divided on the community basis, and the Commissioner by his amended answer has placed the question of the propriety of such division before us for decision. The only provision in any of the Federal revenue acts which relates specifically to community property is section 1212 of the Revenue Act of 1926 which provides that:

SEC. 1212. Income for any period before January 1, 1925, of a marital community in the income of which the wife has a vested interest as distinguished from an expectancy, shall be held to be correctly returned if returned by the spouse to whom the income belonged under the State law applicable to such marital community for such period. Any spouse who elected so to return such

income shall not be entitled to any credit or refund on the ground that such income should have been returned by the other spouse.

As the concessions made by the Commissioner appear to wipe out the deficiency asserted against the petitioner for the year 1919, we have only to determine whether the community income which has heretofore been reported by the husband and wife, each returning one-half thereof, was properly returned, or whether the husband should have returned the full amount as his income. In view of the provisions of section 1212, this question is to be decided by a determination of the nature of the interest of the wife in the income of a marital community under the laws of Texas.

The statutes of Texas (article 4622, Vernon's Complete Texas Statutes, 1920) provide with respect to community property, as far as is here material, that:

All property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife, and during coverture may be disposed of by the husband only * * *.

The early case of *Wright* v. *Hays*, 10 Tex. 130, says, on the subject of the rights of husband and wife as to community property, that:

Their rights of property in the effects of the community are perfectly equal to each other. The difference is this, that, during coverture, her rights are passive; his are active.

\*          \*          \*          \*          \*          \*          \*

Her right in that property is equal to that of the husband.

The case of *Edwards* v. *Brown*, 68 Tex. 329; 4 S. W. 380, holds:

It is settled law in this state that the interests of the husband and wife in the community property are equal, whether the deed be taken in the name of either, or the names of both (*Veramendi* v. *Hutchins*, 48 Tex. 531; *Cooke* v. *Bremond*, 27 Tex. 460; *Mitchell* v. *Marr*, 26 Tex. 330; *Higgins* v. *Johnson*, 20 Tex. 389;) and there are decisions of our courts in which the title of the wife or of her heirs in the common estate, held in the name of the husband, is denominated a legal title, (*Johnson* v. *Harrison*, 48 Tex. 268; *Garner* v. *Thompson*, 1 Tex. Law Rev. 286.) But, as we take it, by this must be meant the wife or her heirs have beneficial title in fee-simple, which, save as to the husband's power of management and disposition during her life, and power to sell for the payment of community debts after her death, is in no degree subordinate or inferior to his right. The legal title is in him or the heir of him who is the grantee in the face of the conveyance, although another, such, for example, as a wife or a partner, may have an equal interest in the property conveyed.

The case of *Kircher* v. *Murray*, 54 Fed. 617, involved the question of the right of a widow to recover a share in her deceased husband's estate consisting of bounty lands granted him by the State of Texas. It is there held, at p. 626, that:

The plaintiff acquired a real, beneficial interest in and to one-half of the land in controversy by virtue of her community rights; but the interest and title thus acquired were equitable.

The case of *Merrell* v. *Moore*, 47 Tex. Civ. App. 200; 104 S. W. 514, was one in which the former wife of the decedent Merrell was seeking to recover as her share of the community property one-half of the estate of the decedent. In the decision it is said, in part, that:

> If she [the wife] had not forfeited her share of the community property, she was the absolute owner of one-half of it, and, in the absence of community debts to be paid, she would be entitled to a division and the possession of the same.

*Cullers* v. *James*, 66 Tex. 494; 1 S. W. 314, holds that:

> She [the wife] has equally with her husband an interest in the community property * * *.

In *Patty* v. *Middleton*, 82 Tex. 586; 17 S. W. 909, 911, it is said:

> It cannot be denied that the beneficial interest of husband and wife in their community property is equal, and so without regard to the fact that it may have been conveyed in terms to one only * * *.

The cases of *Edwards* v. *Brown*, *Kircher* v. *Murray*, and *Merrell* v. *Moore*, *supra*, are construed in *Bek* v. *Miller*, (App. D. C.) 8 Fed. (2d) 797, 799, to hold that in Texas the wife has "a present vested one-half interest in the community property." In view of these decisions there would seem to be little room for doubt that in a marital community in Texas the wife has a vested interest in the community income. So that, if, as appears to be the case here, the taxpayer and his wife reported their income for 1919 on a community property basis, the Commissioner is now precluded by section 1212 of the Revenue Act of 1926 from taxing the whole of the income to the taxpayer.

> *Judgment will be entered on 15 days' notice, under Rule 50.*