### RICHARDSON et al. v. McCLOSKEY et al.
### (No. 6329.)

(Court of Civil Appeals of Texas. Austin. Nov. 24, 1920. Rehearing Denied March 3, 1921.)

1. **Receivers ⬅️36—Where petition was controverted by verified answer, pleadings are not conclusive.**

Where the petition for appointment of a receiver, etc., was controverted by a verified answer, the pleadings are not conclusive, and the action of the trial court in appointing the receiver should be tested by the evidence.

2. **Receivers ⬅️19—Strong case necessary for the appointment of a receiver to displace executor.**

A strong case is required to induce the appointment of a receiver to take assets from the custody of an executor or administrator displacing his authority.

3. **Appeal and error ⬅️955—Receivers ⬅️8—Appointment of receiver rests largely in discretion of trial court.**

The appointment of a receiver rests largely within the discretion of the trial court, and its discretionary act will be reviewed only in case of an abuse.

4. **Receivers ⬅️38—Evidence held to warrant the appointment of a receiver to protect estate.**

In a suit against executors for the construction of a will and accounting, etc., evidence *held* to warrant the appointment of a receiver under Vernon's Sayles' Ann. Civ. St. 1914, art. 2128, subd. 1, on the theory that such appointment was necessary to protect the estate; it being in danger of being lost or injured.

5. **Receivers ⬅️19—Insolvency not necessary to receivership to protect estate.**

To warrant the appointment of a receiver to protect property from being lost or destroyed, it is not necessary under Vernon's Sayles' Ann. Civ. St. 1914, art. 2128, subd. 1, to show that the persons having custody of the property were insolvent.

6. **Receivers ⬅️6—Where authorized by statute adequate remedy at law is no defense.**

The appointment of a receiver under Vernon's Sayles' Ann. Civ. St. 1914, art. 2128, subd. 1, on the ground that property was in danger of being lost or destroyed, cannot be attacked on the theory that plaintiffs had an adequate remedy at law; the proceeding being based on the statute, and not general principles of equity.

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Receivers ⚙➟21—Executor's offer to allow plaintiffs possession of part no ground for refusing receiver.**

Though executors offered to allow plaintiffs, who were suing for an accounting, etc., to take possession of funds in hand and collect rents, that is no ground for denying the appointment of a receiver where the estate was liable to be lost or destroyed; receivership having up to that time been opposed.

### On Rehearing.

**8. Receivers ⚙➟18—Statute allowing receiver where property liable to be destroyed held applicable.**

Where plaintiffs, the residuary legatees under the will of a husband, sought an accounting by the executors and asserted rights in property delivered to the executor and legatee of the estate of the husband's deceased wife, who was entitled to one-half of the community, *held*, that the controversy over the property was sufficient to bring the case within the Vernon's Sayles' Ann. Civ. St. 1914, art. 2128, subd. 1, authorizing the appointment of a receiver in an action between persons jointly owning or interested in any property, when it is shown that the property is in danger of being lost or destroyed.

**9. Receivers ⚙➟18—Where appointment proper as to portion of property, receiver may take custody of all.**

Where after the death of husband and wife the executors paid over portion of the community to the executor and residuary legatee of the wife, and the husband's residuary legatees, asserting rights in the property, sought an accounting, etc., and the appointment of a receiver on the theory that the property was in danger of being lost, the court may appoint a receiver for the whole of the property and take it into custodia legis, though the executor of the husband's estate was not a joint owner of the property, and might not come within the exact terms of Vernon's Sayles' Ann. Civ. St. 1914, art. 2128, subd. 1.

**10. Receivers ⚙➟16—Appointment of receiver warranted on general principles of equity.**

In a suit by the residuary legatee against the executor and the executor and residuary legatee of the estate of the testator's wife, who had obtained a division of the community, evidence *held* to warrant the appointment of a receiver under general principles of equity; it appearing that the estates were not properly cared for and were in danger of being lost or materially injured.

**11. Receivers ⚙➟19—Insolvency not condition precedent to appointment.**

Insolvency of a person in possession or enjoyment of property for which a receiver is sought is not always indispensable to the granting of the order, though the fact of financial irresponsibility may be sufficient to justify the appointment on the ground that a remedy at law for loss or injury would be inadequate.

**12. Dismissal and nonsuit ⚙➟28—Executor of estate of widow of decedent not dismissed as party.**

Where the original petition by the residuary legatees of the estate of a husband joined not only the husband's executor, but the executor and residuary legatee of the wife's estate, the fact that the amended original petition did not specify that the action was against the executor of the widow's estate as such will not be treated as a dismissal of the action as to him in his representative capacity, where the relief sought necessitated his presence in his representative capacity, he continued to treat the action as involving his representative capacity.

**13. Appeal and error ⚙➟994(3)—Question of credibility of witnesses for the trial court.**

The question of the credibility of witnesses in support of an application for appointment of a receiver is for the trial court.

**14. Appeal and error ⚙➟863—Appellate court will not review the evidence.**

On appeal from an interlocutory order appointing a receiver, the appellate court will not review the evidence.

**15. Receivers ⚙➟38—Evidence held to warrant finding that books of the estate were not properly kept.**

On appeal from an order appointing receivers to take over the custody of an estate from the executors, evidence *held* to warrant a finding that books of account were not properly kept for the estate.

**16. Attorney and client ⚙➟77—Action of attorney in conduct of litigation binding on client.**

In a suit against executors for an accounting, in which appointment of receiver was asked because of danger that property would be lost, defendants could not complain of finding as one ground for appointment that executors refused to follow the history of the property after it was delivered to the executor and residuary legatee of the estate of decedent's widow, where the refusal was by their attorney.

Jenkins, J., dissenting.

Appeal from District Court, Tom Green County; C. E. Dubois, Judge.

Suit by Robert J. McCloskey and others against George Richardson and others. From an interlocutory order appointing a receiver pendente lite, defendants appeal. Affirmed.

Wright & Harris, of San Angelo, and Snodgrass, Dibrell & Snodgrass, of Coleman, for appellants.

S. E. Taylor and Hill & Hill, all of San Angelo, for appellees.

BRADY, J. This is an appeal from an interlocutory order appointing a receiver pendente lite in the case of Robert J. McCloskey et al. v. George Richardson et al., pending in the district court of Tom Green county.

⚙➟For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The suit was instituted April 25, 1919, and on January 9, 1920, plaintiffs filed a motion for the appointment of a receiver of the property of the estate of T. H. McCloskey, deceased.

In the second amended petition, filed May 6, 1920, plaintiffs alleged that by the terms of the will of T. H. McCloskey, deceased, they were granted a certain interest in such estate, and that George Richardson and James J. Neill were named and duly qualified as independent executors without bond. They further alleged that the estate consisted of lands and personal property, some of which was the separate property of T. H. McCloskey, deceased, and some the community property of himself and his wife, Laura McCloskey, deceased, and that James J. Neill was made sole residuary legatee under the will of Laura McCloskey, and was appointed independent executor of her estate, and qualified as such.

The suit is for an accounting from the executors of the estate of T. H. McCloskey, and a partition and distribution of the property belonging to the estate, and the petition includes additional allegations upon which the application for a receiver was based.

In the original petition plaintiffs did not pray for the appointment of a receiver, but asked for a construction of the will of T. H. McCloskey, and for a determination of their interest in the estate, for an accounting and judgment for their interest and title to the estate, and for such sums of money as the court might hold they were entitled under the will. The sworn pleadings of the plaintiffs asking for a receiver were denied under oath by both defendants. The denial went to most, if not all, of the material allegations of the plaintiffs' pleadings, and, while certain facts were admitted, they were attempted to be excused by the sworn answers.

In the appointment of the receiver the court acted upon the sworn pleadings and the evidence introduced upon the trial of the motion.

The pleadings are voluminous, and we shall not attempt to set out all the averments, but shall only point out the material allegations touching the issues arising upon this appeal.

Plaintiffs alleged the execution of the will of T. H. McCloskey, dated October 16, 1910, and a codicil, dated December 9, 1914, and his death on December 26, 1914; that by the terms of the will, after the payment of the debts, he devised a life interest in his estate to his wife, Laura McCloskey, granting her the income, and providing that upon her death his interest in the estate should be disposed of by his executors, and when converted into cash certain legacies should be paid, and that the residue should be divided between his surviving sisters and brothers, who are the plaintiffs, share and share alike; that the will and codicil were probated at the April term, 1915, of the county court, upon the application of defendants, who were appointed by the court independent executors; that they thereafter qualified without bond, and since have been acting independent of the probate court, having taken charge and possession of the community estate of T. H. McCloskey and wife, which was alleged to be of the approximate value of $125,000, in which the estate of T. H. McCloskey, deceased, owned an undivided one-half interest. They alleged the sale by the executors of some of the personal property of the estate and the collection of rents, revenues, and profits, amounting to about $25,000, and the payment out of the estate by the executors of various sums, aggregating about $12,000.

The petition alleged the death of Laura McCloskey on October 28, 1917, and that she left a will, naming James J. Neill as independent executor, and making him residuary legatee, which was alleged to have been probated at the January term, 1918; that James J. Neill, as independent executor and as residuary legatee of Laura McCloskey, was claiming a large part of the proceeds of the personal estate belonging to the estate of T. H. McCloskey as the property of the estate of Laura McCloskey, and certain specified property which was claimed to be in part the separate property of T. H. McCloskey and in part the community property of T. H. McCloskey and wife, and that defendants were refusing to recognize plaintiffs' interests in such property, but deny the same, and were recognizing and asserting the claim thereto by James J. Neill, inconsistent with and in opposition to the trust estate in their hands.

Plaintiffs further alleged the exclusive possession and control of the estate by defendants, and that they have never been able to ascertain the amount of the rents and revenues collected by them, or the exact amounts paid out by them, and they prayed for an order requiring them to file an inventory and schedule and an itemized accounting. They also alleged negligent and illegal handling of the estate by the executors, and the use of the trust funds for their personal account and profit, without giving notes and securities therefor, and the lending of the trust funds to relatives and business concerns in which they had a private interest; that, without legal authority and in violation of their trust, they had pretended to make a partial division with the estate of Laura McCloskey shortly after her death, and paid to Neill a large amount of personal property; that Neill acted in this matter in the dual capacity of executor and residuary devisee, and that, after diligent investigation, plaintiffs have not been able to ascertain what properties were set aside in the pretended division to the estate of T. H. McCloskey; the failure of defendants to keep proper books or entries of such transaction, or to

furnish plaintiffs with a list or schedule of any properties claimed to have been set apart to the estate; that even after the taking of the oral depositions of defendants and their bookkeepers, and after the filing of the answer and exhibit of defendants, they were unable to ascertain what, if any, assets were set apart to the estate of T. H. McCloskey in the pretended division. They alleged the appropriation of this property to James J. Neill, with the consent of George Richardson, the disputing and denial of plaintiffs' title thereto and interest therein, and the claiming of such property to the exclusion of plaintiffs. They further alleged a conversion and appropriation of the rents and profits of the estate, and refusal to account to plaintiffs for any portion of same, the exact amount of which they were unable to state, the sale of certain real estate belonging. to the estate, and a conversion and appropriation by defendants to their own use of the proceeds, and a refusal to account. It was averred that the defendants were without legal authority to exercise the power to sell the real estate without the consent of plaintiffs, but that since the filing of the suit they had exercised this authority, and had asserted the right to continue to do so, and deny plaintiffs any right to participate in the management, control, or disposition of the estate, and especially to a partition and division of the property, although the legacies, taxes, and other expenses of the estate had been fully paid. It was alleged that, although the suit was filed in April, 1919, no attempt to file any showing or accounting of their management of the estate was made by the defendants until February, 1920, and that they then refused to account for all the properties in their hands. They further averred that the real estate was improved and should be rented and repairs made, insurance taken out, and taxes paid, and that a large portion of the estate consisted of moneys and securities which should be kept at interest pending the suit; that Neill, having and asserting an adverse interest and right in said properties, and in hostility to his trust, is attempting to administer, and the management of the estate is being left by his coexecutor exclusively to Neill; that the properties are unsafe and insecure, subject to waste, damage, and irreparable injury, and that no necessity exists to continue the administration of the estate, but that it should be partitioned and divided, and the proper protection and conservation of the property requires the removal of defendants as executors and the appointment of a receiver.

There are further allegations as to the cloud placed upon their title by pretended and illegal sales of the real estate, to alleged insolvent and irresponsible persons, attempts to sell the same by the executors, and probable loss of rents and income from the property. Bad faith is also alleged, and the use of the funds and revenues of the estate for the private gain of the executors, and the giving away of some of the property of the estate without the consent and over the protest of plaintiffs, and illegal expenditures and charges against the estate. It is also alleged that the books of the estate were and are kept in a negligent, imperfect, and incomplete manner, and that it is impossible to ascertain the true condition of the estate, even after examination of defendants and their bookkeepers, and that such confused state of the accounts was for the purpose of keeping plaintiffs from ascertaining the condition of the property belonging to the estate, and to delay final accounting. It is alleged that the defendants are unfriendly to the plaintiffs, and have purposely delayed settlement with them, and have compelled the bringing of suit, the said Neill having declared it to be his purpose to see that plaintiffs got as little as possible out of the estate, that the defendant Neill is insolvent, and that the defendant Richardson is heavily indebted, and his property, although large, is heavily incumbered.

The sworn answer of the defendants controverted most of the charges in the petition, and sought to excuse such admissions as were made; and, in addition, they attach certain exhibits purporting to show the property of the estate and the condition of same. They also asked for a construction of the will of T. H. McCloskey.

As. to the evidence, there was testimony tending to show at least the following facts deemed material to the questions involved on this appeal:

The relations and interests of the parties in the property substantially as alleged by plaintiffs. The making of "some kind of a division" of the community estate shortly after the death of Laura McCloskey, and distributing a large amount of the personal property to Neill, who was Laura McCloskey's executor and residuary devisee. No written evidence or record of this transaction was ever made, and the books do not show what the final terms of this division were, nor what particular property was set apart to the estate of T. H. McCloskey to offset the property awarded Neill. The executors refused to consent to follow the history of this property after Neill received it, even for the purposes of a proper accounting. The books and memoranda of the estate were kept in a confused, inaccurate, and careless manner, and the executors, at the date of their oral examination, had practically ceased to give the estate any attention. They had borrowed money of the estate at will, without giving security or even notes, although the loans were repaid. They also gave away to an old favorite of the McCloskey family money belonging in part to appellees without their consent. They allowed large sums of money to remain for. extended periods in

bank, without interest. They did not even know at the time their testimony was given what property was rented or for how much. They delayed any attempt at an accounting for a long time, and the exhibits finally attached to their amended answer do not show the condition of the estate or the property handled by them, as a proper accounting should. Even after the suit was brought, they sold part of this real estate, which the court held was beyond their authority, as executors; and they were attempting and threatening to sell the remainder. They were hostile to defendants and to their claims; the animus of Richardson especially being very marked while giving his testimony. They had excluded appellees from the possession and control, as well as any participation in the handling of the property or its proceeds, although a long time had elapsed after payment of the legacies and debts, and appellees, under the court's ruling, were entitled to partition and distribution.

Before acting upon the application for receiver, the trial court, in passing upon the demurrers, found it necessary to construe the will of T. H. McCloskey, and held that the debts of T. H. McCloskey were payable out of the community estate; that upon the death of Laura McCloskey the executors were required to pay out of the personal estate of T. H. McCloskey the pecuniary legacies provided in his will; that upon the payment of the legacies and inheritance taxes the plaintiffs were entitled to the possession and use of the residuum of the estate, and that the executors were without power to sell the real estate for the purpose of distribution to the residuary devisees; that during the existence of the life estate of Laura McCloskey the expenses of the community estate were payable from the income.

In the judgment the trial court expressly found that it was necessary that a receiver should be appointed during the pendency of the suit; and the court also appointed a master in chancery to aid the court in investigating and finding the condition of the estate, with minute powers and duties.

## Opinion.

[1] Under the state of the pleadings, the correctness of the trial court's action in appointing a receiver must be chiefly tested by the evidence adduced at the hearing, because the pleadings are of little, if any, aid in determining this question. Falfurrias Immigration Co. v. Spielhagen, 103 Tex. 339, 127 S. W. 165.

[2, 3] Appellants have cited a number of cases laying down the rule that a strong case is required to induce the appointment of a receiver to take assets from the custody of an executor or administrator, displacing his authority. This principle is sustained by many cases, and is especially applicable where the jurisdiction to appoint a receiver is de-

pendent upon the usages of equity. There is another rule, however, which must be kept constantly in mind. The appointment of a receiver rests largely within the discretion of the trial court, and where there is jurisdiction or authority to make the appointment, the exercise of the power will not be revised, except where there has been a clear abuse of discretion. Childress v. State Trust Co., 32 S. W. 330; Cahn v. Johnson, 12 Tex. Civ. App. 304; 33 S. W. 1000; Harris v. Hicks, 13 Tex. Civ. App. 134, 34 S. W. 983; Houston Cemetery Co. v. Drew, 13 Tex. Civ. App. 536, 36 S. W. 802; West v. Herman, 47 Tex. Civ. App. 131, 104 S. W. 432; Merrell v. Moore, 47 Tex. Civ. App. 200, 104 S. W. 514.

[4] A receiver was sought in this case, primarily under the first subdivision of article 2128, Vernon's Sayles' Statutes. This section authorizes the appointment of a receiver in the following cases, among others: In an action between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff or any party whose right to or interest in the property or fund or the proceeds thereof is probable, and where it is shown that the property or fund is in danger of being lost, removed, or materially injured.

Appellants dispute the applicability of this statute, but, upon careful consideration of the question, we have concluded that appellees have shown the right to proceed under it. There can be no question that the pleadings and evidence disclose that appellant Neill and the defendants are joint owners of some of the property in controversy. As to the appellant Richardson, and Neill in his capacity as independent executor, it is clear that they are claiming, at least, a possessory interest in the property to the exclusion of appellees. Under the terms of the will as construed by the trial court, and under the pleadings and evidence, appellees are entitled to contest appellants' right to the possession and use of such property; and we are of the opinion that the above-cited statutory provision is applicable to this case. Jerrard v. McKenzie, 61 Tex. 40; Lumpkin v. Smith, 62 Tex. 249; Merrell v. Moore, 47 Tex. Civ. App. 200, 104 S. W. 514; Quintana v. Giraud, 209 S. W. 770.

The question then comes down to this: Is there evidence in the record sustaining the implied finding of the trial court that the property or fund is in danger of being lost, removed, or materially injured? Having expressly made the finding in the judgment that a necessity for the appointment of a receiver existed, it must be presumed that the trial court found that the property was in danger of being lost, removed, or materially injured, as required by the statute.

In the statement of the case we have set out substantially the conclusions of fact bearing upon the question now being discussed.

We think the evidence amply justified the finding that the property was in such danger, and that it was not only proper, but necessary, for the trial court to appoint a receiver to conserve the property, and as a basis for the appointment of a master in chancery, which agency will be of great value, if not indispensable, in aiding the court to determine the complicated issues of this case, in unravelling the confused and entangled condition of the estate, and in doing justice to the parties. While it may be true that some of the acts complained of by appellees would not of themselves constitute sufficient grounds for the removal of the executors, and were executed transactions, it is also true that the trial judge had the discretion to judge the future by the past. Under this test, without meaning in any wise to reflect upon the integrity of appellants, it is our opinion that the trial court was fully authorized from the evidence to conclude that the property was in danger of loss, removal, and injury. It is the peculiar province of the lower court to weigh the evidence, and, in the light of the facts contained in the record, there was ample warrant for concluding that appellants, both hostile to appellees and adversely claiming the use and possession of the estate as executors, and one of them adversely claiming the title to a part of it, should not be permitted to hold possession and have control of the property pending the decision on the merits, and that the property could be properly conserved only by taking the estate out of their hands.

[5] Appellants also urge that a receiver should not have been appointed, because it was not shown that appellants were insolvent. Without discussing the merits of the adverse claim that the evidence showed virtual insolvency on the part of Neill and also Richardson, whose property was shown to be heavily incumbered and his indebtedness large, we think a sufficient answer to appellants' contention is that the statute in such a case does not require insolvency to be shown. The proceeding is statutory, and, as was said by the Court of Civil Appeals for the First District, in Temple State Bank v. Mansfield, 215 S. W. 154, in which a writ of error was recently denied by the Supreme Court:

"The right to have a receiver under any of the first three sections of the article above cited is a legal right not dependent upon the general rules of practice in courts of equity, and, when the facts alleged in a particular case as grounds for the appointment of a receiver bring the case within the provisions of either of these sections of the article, allegations and proof of insolvency of the defendant, inadequacy of legal remedy, or other equitable grounds for the appointment of a receiver are not required to authorize such action by the court."

See authorities cited in that case and also Bingham v. Graham, 220 S. W. 105.

[6] Appellants also assail the order appointing a receiver, upon the ground that appellees had an adequate remedy at law, in that they might have had an auditor appointed, or might have proceeded in the probate court to require the executors to give bond for the protection of appellees, and further that the remedy of injunction would be sufficient in this case.

In addition to the answer that this proceeding is based upon statute, and is therefore a legal right not dependent upon the rules and practices of equity, we are clearly of the opinion that none of the remedies suggested would be adequate under the issues of this case.

[7] It is also urged by appellants that the court erred in appointing a receiver, because they had offered, in open court, that appellees might take possession of all the money on hand and collect their part of the rents, and that appellees have voluntarily declined to accept all the particular relief they could obtain from the appointment of a receiver, and there is no necessity for such appointment.

Independently of the point that appellees relied upon a legal statutory right for a receiver, we think the principle invoked by appellants is inapplicable, in view of the manner in which such offer was made. They were vigorously resisting the appointment of a receiver up to this point in the trial, and then they made a proposition which was conditional and so limited as to deny the substantial relief appellees were seeking. Even then they expressly refused to agree to the appointment of a receiver for the entire property, but only in part. They made no offer to give bond for the security of the appellees, and the proposition was properly rejected by the trial court.

All of the assignments, whether discussed in this opinion or not, have been carefully considered by this court, and, believing that they are without merit, they are each overruled.

No reversible error having been shown, the judgment is affirmed

Affirmed.

### On Rehearing.

The able and exhaustive argument of counsel for appellants on motion for rehearing has led us to give very careful consideration to the grounds urged therein. While we have reached the conclusion that our former decision was correct, we desire to restate to some extent our views as to some of the questions in the case. We also wish to clarify, in some particulars, our findings as stated in the original opinion.

[8] It is earnestly insisted that we erred in holding that this case falls within the purview of subdivision 1, art. 2128, Vernon's Sayles' Statutes. Upon re-examining the question, we are convinced that we were

right. There can be no doubt that as to the appellant Neill appellees are claiming, and the evidence tends to support their claim, as joint owners with him, some of the property in controversy. As to him the case seems to fall clearly within the letter of this statute. With reference to appellant Richardson, it may be conceded that appellees do not claim a joint ownership with him. Be this as it may, the statute is not limited to joint ownership. It authorizes a receiver not only where the parties jointly own the property or fund, but where they are jointly interested therein. It is not necessary even that an absolute right or interest should appear. It is sufficient if the interest is probable, subject, of course, to the condition that the property or fund must be shown to be in danger of being lost, removed, or materially injured. We have no doubt that as to Richardson also the statute is applicable, under the issues of this case. We again refer to the cases cited in the original opinion.

[9] In addition to what has been said, we call attention to the anomalous situation which would result if the court having authority to appoint a receiver for the property as to Neill would be without power to extend the receiver's control over the entire property, to the exclusion of the coexecutor. It must be remembered that the custody of a receiver is not that of any of the parties, nor of himself individually. The property is in custodia legis. Possession is that of the court for the preservation of the property and for its just distribution ultimately. To our minds, it is inconceivable that the court would be so limited in its power, under this statute, as that its authority must be divided with a person free to act independently of, and even contrary to, the orders of the court.

[10] While we think article 2128 affords statutory authority for the appointment of a receiver, we also believe that the last subdivision is applicable; in other words, that it has not been shown that the trial court abused its discretion in appointing a receiver, under the principles and usages of equity. Without, we hope, any gratuitous reflection upon appellants, and certainly not intending such, we think the evidence was sufficient to support the conclusion that their conduct of the trust estate was such as to justify the trial court in appointing a receiver for the conservation of the property, as being in danger of being lost, removed, or materially injured. It would not be profitable to again recite the facts which, in our opinion, tend to this effect.

[11] As to the question of insolvency, it may be admitted that the evidence does not show that either Neill or Richardson was insolvent. It is not every case of equitable receivership, however, which depends upon a showing of insolvency. This is not a mere creditor's suit, but involves the title to property and an equitable partition and ac-

counting. In such a case it is not thought that the question of solvency or insolvency is controlling, where there is substantial ground to believe that the property is in danger. In 34 Cyc. p. 57, it is said:

"Insolvency of a person in possession or enjoyment of property for which a receiver is sought is not always indispensable to the granting of the order, although the fact of financial irresponsibility may be sufficient to justify the appointment, and in any case necessarily intensifies the probability of loss to the complainant, and will serve at least to show that his remedy at law for any loss or injury that may be sustained would be inadequate."

In this connection we should add that we do not base our conclusion that the evidence was sufficient to support the finding of the trial court that there was a necessity for a receiver, founded upon danger to the property alone, upon any single fact in the record. Our decision was based upon all of the facts considered as an entirety, and not upon any isolated fact or circumstance. We say this because some of our findings are attacked as insufficient to justify the appointment of a receiver. It would not be profitable to again review these facts nor discuss the evidence upon which they are predicated.

[12] Another point not discussed in the original opinion is the claim that the court was without jurisdiction to authorize the receiver to take possession of the property in the hands of Neill, as executor of the Laura McCloskey estate, because he had been dismissed in that capacity from the suit by the amended petition of appellees. Certain authorities are cited in support of this proposition, but they are not analogous on the facts.

It is true that the first paragraph of the original petition, in the description of the parties, named Jas. J. Neill individually and "Jas. J. Neill, as independent executor of the estate of Laura McCloskey, deceased." In the amended petition the language quoted was omitted. If this be not considered as clearly an error and oversight in copying the petition for the purpose of amendment, we think such language was merely descriptive, and not necessarily controlling as stating the parties defendant and their capacities. The averments of the amended petition undertake to state a cause of action against Neill, not only individually, but as such executor, and as residuary legatee and devisee of the estate of Laura McCloskey, and concludes with a prayer for judgment specifically against Neill in such capacities. Furthermore, appellants did not interpose any plea of nonjoinder, but Neill, as executor of such estate, pleaded a misjoinder in the making of the estate a party. In his answer he treated the petition as a suit against him as executor of the estate of Laura McCloskey, and specially pleaded that there had been no misappropriation of any of the personal property of the T. H. McCloskey estate, because a sufficient amount.

of personal property was left to offset the property turned over to him. In these circumstances we think it is clear that there is no merit in the point that Neill had been dismissed from the suit in the capacity of executor. Clark v. Haney, 62 Tex. 511, 50 Am. Rep. 536; San Marcos Electric Light & Power Co. v. Compton, 48 Tex. Civ. App. 586, 107 S. W. 1151; Railway Co. v. Wilhelm, 49 Tex. Civ. App. 639, 108 S. W. 1194.

In the argument it is also complained that we erred in adopting the lower court's construction of the will of T. H. McCloskey in respect to the power of the executors to sell the real estate. It may be that the language employed by us would justify the inference that we approved the trial court's ruling on this point, but such was not our intention. We did not find it necessary, in passing upon the questions before us on this appeal, to determine whether that ruling was correct or not; and we now expressly pretermit any decision thereon. In this connection we wish to state that the finding as to some of the real estate having been sold by appellants, after the suit was brought, did not mean after the court construed the will on this point.

We are asked to withdraw or correct certain findings of fact, which we will briefly consider:

First, appellants complain of our finding that they were hostile to appellees and their claims, and that the animus of Richardson, especially, was very marked while giving his testimony. Under the evidence, we see no reason to correct this finding. It is supported fully as to Richardson; and the evidence also shows the adverse attitude of Neill and his hostility in the sense in which we used the term.

Next, it is claimed that we should not have made the finding that appellants allowed large sums of money to remain for extended periods in bank without interest. The evidence supports the finding.

Appellants also assail the finding that they gave away to an old family servant in the McCloskey family money of the estate in controversy without the consent of appellees. The testimony as well as the argument of counsel convince us that we were right in making this finding. It is perhaps but fair to say that the amount here involved was small, being about $50; yet it was a circumstance proper to be considered by the court in determining the manner in which the trust estate had been handled and its probable conduct in the future. It was charged to the T. H. McCloskey estate and has never been repaid. It is a circumstance and nothing more, and was not stated to be otherwise.

[13, 14] Assault is made upon the finding that no written evidence or record of the partition or division of the personal property made with Neill was ever made, and that the books did not show the terms of the division nor the facts of the transaction. Ap-

pellants contend that there is no evidence to show that this transaction was not fully set forth in the sworn answer and the exhibits thereto, and that the evidence shows there was an equal amount of personal property left in the estate after the distribution to Neill as executor of the Laura McCloskey estate. They make a similar contention as to the finding that the books and memoranda of the estate were kept in a confused, inaccurate, and careless manner. We think it sufficient to say that the pleadings of appellants were not evidence. Furthermore, they were interested witnesses, and it was the province of the trial court to determine the weight to be given to their testimony. We cannot undertake to review the evidence, but it is proper to say, in this connection, that while appellants pleaded a proper administration of the estate from the beginning and a careful preservation of the same, and attached exhibits which purported to be correct, this cannot be considered under the state of the pleadings. Appellants specially pleaded that, when the division was made with Neill, there was at least an equal amount of personal property left for the account of T. H. McCloskey estate. Appellees' counsel point out in their brief the fact that there is much room for the contention that, in view of the amount of money and personal property on hand at the time of the trial, after allowing for the payment of legacies, debts, and expenses, the evidence impeaches this claim. These were matters peculiarly for the trial court to consider, and we do not think there was any error in the findings referred to.

[15] As to the condition of the books of the estate, they were not only inaccurate and incorrect as to the settlement with Neill as executor of the Laura McCloskey estate, which one of the witnesses characterized as "some kind of a division," but in other particulars which the evidence strongly tends to show. As illustrating this, Mr. Richardson testified and admitted that the executors would "do damn well to get a statement of the condition of the estate from the books."

[16] It is also complained that we found that the executors refused to consent to follow the history of property awarded to Neill, after he received it, even for the purpose of a proper accounting. It is urged that this objection was made, not by appellants, but by one of their counsel, upon the taking of the oral testimony. The attorney was their representative, and we think his action was binding upon them. Indeed, they referred the decision of this matter to their attorney. Otherwise the argument as to this finding goes, not to its correctness, but to its significance and effect. We again say that we did not predicate our approval of the court's judgment upon any one isolated fact or group of facts, but it is proper to add upon this very point that, in view of appellees' contention that this transaction

was a division of the property of the estate, it was not improper for the trial court to consider the refusal to trace the property. It certainly had some bearing, not only upon the manner of administering the estate, but upon its probable disposition in the future.

There are several other findings which we are asked to revise. They will not be discussed, but the request will be denied, because we think the evidence substantially supports them.

In conclusion of the discussion of the motion, we think it should be said that there is no merit in the complaint of appellants that we have indorsed alleged willful and false allegations in the pleadings of appellees reflecting upon the honesty and integrity of appellants. In the original opinion we endeavored to point out clearly that the judgment could not be supported on the pleadings alone. We recognized that, there being sworn denials, the pleadings would not constitute evidence in this case, except as to admitted facts. Our conclusion was based upon the evidence and admissions in the pleadings. It was not intended (nor do we think that the opinion justifies the inference) to sanction any mere averments tending to reflect upon appellants. Indeed, we have endeavored to refrain from any gratuitous reflections upon them. The facts stated as our findings of fact supported by evidence are alone what we considered.

All of the matters set up in the motion have been carefully considered, and, believing that we have correctly decided the appeal, the motion is overruled.

Motion overruled.

JENKINS, J. (dissenting). I am of the opinion that the motion for rehearing herein should be granted, for the following reasons: First, receivership is not authorized herein by subdivision 2, art. 2128, Vernon's Sayles' Ann. Civ. for the reason that the parties herein are not jointly interested in the property or fund, and for the further reason that the property or fund is not shown to be in danger of being lost or removed or materially injured pending this suit.

By "jointly interested," as that term is used in this statute, I think there must be a joint ownership of the party seeking the receivership with the party against whom receivership is sought. An executor, as such, has no property interest in the estate. He does not hold the property for himself, but as trustee for the owners and creditors. He is entitled to exclusive possession, and such holding is not adverse to the heirs or legatees. V. S. art. 3235; Giddings v. Steele, 28 Tex. 748, 91 Am. Dec. 336; Laals v. Seidel, 28 Tex. Civ. App. 140, 66 S. W. 871, 68 S. W. 724; Id., 95 Tex. 442, 67 S. W.

1015; Northcraft v. Oliver, 74 Tex. 167, 11 S. W. 1121.

There can be no contention, under the facts of this case, that Richardson had any interest in the property, or that he was holding the same except as executor. If Neill has a joint interest in the property, by reason of his being a legatee under the will of Mrs. McCloskey, this affords no ground for a receivership as against Richardson. The evidence does not sustain a finding that "the property or fund is in danger of being lost or removed or materially injured."

The statute referred to further provides for the appointment of a receiver "in all other cases where receivers have heretofore been appointed by the usages of the court of equity." Under the usages and practices of the court of equity, a receiver will be appointed only when it is necessary for the future protection of the property.

The past conduct of the executors is referred to in the original opinion herein as being reprehensible in the following particulars:

"(1) The allotment to the estate of Laura McCloskey of a large amount of personal property without an entry on the books showing the amount, and without showing what was set aside to the estate of T. H. McCloskey."

If appellants cannot show what they have turned over to the estate of Laura McCloskey, they are entitled to no credit for same, and must account for all property which came into their hands belonging to the estate of T. H. and Laura McCloskey. It matters not how large an amount was turned over to the estate of Laura McCloskey, if enough remained to compensate the estate of T. H. McCloskey.

"(2) The executors refused to consent to follow the history of this property after Neill received it."

If any property was turned over to the estate of Laura McCloskey, it became the property of such estate, and the executors of the estate of T. H. McCloskey have no business to follow it for any purpose.

"(3) The books and memoranda of the estate were kept in a confused, inaccurate, and careless manner, and at the time of their oral examination they had practically ceased to give the estate any attention."

So far as I have been able to ascertain from a careful examination of the statement of facts, the criticism as to keeping the books applies only to the failure to make a proper entry as to what personal property was set aside to the estate of Laura McCloskey. It appears from the evidence that a partition of the personal property was agreed upon, and an itemized statement of the property turned over to the estate of Laura McCloskey, and entered on the jour-

nal at the time of such partition, but that shortly afterwards some changes were made. In consequence of this, the journal entry referred to was not correct in so far as related to the changes made, and thereafter the bookkeeper was not furnished with an itemized statement as to such changes.

I find no evidence in the statement of facts that the appellants had ceased to give the estate proper attention. Nothing was left but money, which was deposited in the bank, and real estate, which was rented, insured, and kept in repair by a real estate agent employed for that purpose, and who rendered monthly accounts of such matters.

"(4) They had borrowed money from the estate without giving their notes for the same."

True, but the same was charged against them on the books, and they repaid all amounts borrowed, with 8 per cent. interest.

"(5) They also gave away to an old favorite of the McCloskey family money belonging in part to appellees without their consent."

The evidence indicates that this was a loan of several small sums, amounting in the aggregate to $31.

"(6) They delayed any attempt at an accounting for a long time, and the exhibits finally attached to their amended answer do not show the condition of the estate or the property handled by them, as a proper accounting should."

The exhibits attached to their amended answer are full and complete, and show a full accounting as to their management of the estate.

"(7) Even after the suit was brought, they sold part of the real estate, which the court held was beyond their authority as executors, and they are attempting to and threatening to sell the remainder."

The sale of a part of the real estate was made at the request of the attorney for appellees. As stated in the majority opinion herein on motion for rehearing, no attempt or threat to sell real estate was made after their right to do so was challenged by the pleadings in this cause.

"(8) They were hostile to defendants (appellees) and their claims; the animosity of Richardson especially being very marked while giving his testimony."

There is no evidence that Neill was hostile to any of the appellees. That Richardson was angry because he had been charged with improper conduct furnishes no reason for an appointment of a receiver.

"(9) They had excluded appellees from the possession and control as well as participation in the handling of the property or its proceeds."

This they had the legal right to do until the administration should be closed. Indeed, it was their duty so to do.

In this case appellees applied for the appointment of a receiver, alleging certain facts tending to show that they were entitled to the same under the rules of equity. Appellants denied specifically these allegations. Upon this state of the pleadings, appellees were not entitled to the appointment of a receiver, unless the evidence introduced by them should show that the answers of appellants were not true. The itemized exhibits, attached to appellants' answer and made a part thereof, were not questioned by any evidence, except in so far as relates to the personal property set aside to the estate of Laura McCloskey. The evidence in this regard shows only that certain property was set aside to the estate of Laura McCloskey, by agreement of parties, but that subsequently some of such property was returned to the estate of T. H. McCloskey, by the executor of the estate of Laura McCloskey. The answer of appellants shows that the entire estate coming into their hands was the community property of T. H. McCloskey and wife at the time of his death; that the same consisted of—

| | |
|---|---:|
| Real estate, appraised at | $49,200.00 |
| And all personal property, appraised at | 32,848.46 |

To which should be added:

| | |
|---|---:|
| Profits on stock sold | 1,967.00 |
| Real estate sold | 11,000.00 |
| Rents prior to Mrs. McCloskey's death | 11,602.01 |
| Interest prior to Mrs. McCloskey's death | 4,395.26 |
| Dividends on stocks | 1,490.50 |
| Total personal property | $63,303.03 |

To which should be added amounts received since filing the answer, as admitted by appellants:

| | |
|---|---:|
| Rebate on insurance | 1.90 |
| Rents | 430.35 |
| From other sources | 357.35 |
| Total personal property coming into the hands of executors | $64,092.63 |

From this should be deducted:

| | | |
|---|---:|---:|
| Loss on stock sold | $ 2,650.00 | |
| Loss on furniture sold | 250.00 | |
| Loss on Franklin note | 250.00 | |
| Loss on open accounts | 800.00 | |
| Paid Mrs. McCloskey during life | 10,360.00 | |
| Paid Mrs. McCloskey's funeral and doctors' bills | 900.00 | |
| Total | | 15,210.00 |

| | |
|---|---:|
| Balance net value of personal property, as shown by inventory, including proceeds of real estate sold | $48,882.63 |
| To this add receipts since Mrs. McCloskey's death | 14,832.39 |
| Total personal property received | $63,715.02 |

The itemized statement shows disbursements prior to the death of Mrs. McCloskey of $34,849.49, but, as this includes money loaned, which was repaid, $24,869.60, there should be credited on disbursements, for the purpose of showing property on hand, only the difference, which is $9,979.89.

Total personal property..................... $63,715.02

Disbursements.

Prior to Mrs. McCloskey's death..$ 9,979.89
Since Mrs. McCloskey's death.... 16,876.27

Total ......................... 26,856.16
Balance personal property.................. $36,858.86
Half belonging to Mrs. McCloskey's estate $18,429.43

Half belonging to T. H. McCloskey's estate $18,429.43

Paid from T. H. McCloskey's
Estate.

Legacies ...........................$8,500.00
To Mrs. Glick......,................ 1,250.00
Inheritance tax...................... 428.00       9,728.00

Balance personal property belonging to T.
H. McCloskey's estate..................... $ 8,701.43

To meet this appellants have on hand:

Cash in bank.........'.............$ 4,516.12
Unsold real estate, value not
shown, but alleged to be worth
$75,000—one-half of this belongs
to estate of Laura McCloskey... 37,500.00

Total .........................$42,016.12

Or an excess of resources over liabilities to appellees of $33,814.69. This upon the theory that the $18,429.43 belonging to Mrs. McCloskey's estate has been turned over to Neill. The burden was upon appellees to show that the estate would probably be wasted during the pendency of this suit. The court entered a restraining order to prevent appellants from selling any more of the real estate during the pendency of this suit. Appellants have not complained of this order. So far from showing any probability that the estate had been or would be wasted, I think the answer of appellants, which is not attacked by the evidence, except as to the item of personal property turned over to the estate of Mrs. McCloskey, shows conclusively that there is no danger of the estate being lost or removed during the pendency of this suit, and that appellees will not be materially injured by failure of the court to appoint a receiver.

In the opinion of the majority upon rehearing it is stated that the conclusion of the court is not based upon any one finding of fact, but upon all of them in the aggregate. I do not know how to weigh the aggregation of facts without determining the value of each. A careful examination of the record has led me to the conclusion that the findings of fact by the majority are either unsupported or immaterial.