**SAULSBURY v. CLAY et al.**
No. 3396.

Court of Civil Appeals of Texas. Amarillo. Feb. 12, 1930.

Rehearing Denied March 5, 1930.

Cook, Smith & Teed, of Pampa, for appellant.

Willis, Studer & Studer, Douglass & McConnell and W. M. Lewright, all of Pampa, Fischer & Fischer, of Amarillo, and E. F. Ritchey, of Miami, for appellees.

RANDOLPH, J.

The original suit, with which other suits were consolidated, was filed on the 19th day of February, 1929, by the International Supply Company of Texas in the district court of Gray county, Tex., and numbered 1899 on the docket of said court—which suit was brought against George W. Bilbo, the United Eight Oil Trust, a common-law trust, of which said Bilbo was the sole trustee, W. B. Saulsbury, Fox Rig & Lumber Company, a corporation, I. Rudman, doing business under the name of Pittsburgh Pipe Threading Company, and Jones-Everett Machine Company, a corporation.

The defendant Rudman filed his answer in said cause on the 28th of February, 1929; on the 18th of March, 1929, Saulsbury filed his answer and cross-action against defendant Rudman. It does not appear that defendants Bilbo, the United Eight Oil Trust, Fox Rig & Lumber Company, and the Jones-Everett Machine Company made any appearances or filed answers in said cause. On the 25th of March, 1929, T. E. Stennett, with leave of the court, filed his plea of intervention in said cause; on the 25th of March, 1929, R. C. Russell, with leave of the court, filed his plea of intervention in the same cause. On the 25th of September, 1929, E. Bass Clay filed his plea of intervention in said cause.

On the 25th of September, 1929. Clay filed his motion, reciting that there were pending in said court three several suits, to wit: International Supply Company v. George W. Bilbo et al., No. 1899; International Supply Company v. George W. Bilbo et al., No. 1900; and E. Bass Clay v. W. B. Saulsbury et al., No. 2102, in which motion it is represented that all of said causes of action and suits in-

volve the lease on the southwest quarter of section 177, block B–2, of the H. & G. N. Railway Company surveys, each of said parties seeking to subject said lease to some character of right or lien, and that each of said parties to each of said several suits are proper and necessary parties to the other and a judgment granting complete relief to any of the parties cannot be entered or granted to them in either of said suits without adjudicating the issues presented in the other suits, and prays that said three suits be consolidated, and that the various parties be required to replead. This motion was granted by the trial court, and the causes were consolidated under the style of "International Supply Co. of Texas v. George W. Bilbo, et al., No. 1899." This action of the court in consolidating said causes was duly excepted to by defendant Saulsbury.

On the 19th day of April, 1929, the defendant and intervener, T. E. Stennett filed in said cause an application for the appointment of a receiver, and the trial court, acting on said application, granted it and appointed one K. F. Gilchrist, as receiver, on the 30th day of April, 1929. The defendant Saulsbury contested the necessity of the appointment of such a receiver and duly excepted thereto. The receiver so appointed was ordered by the court to take possession of: "All the property, real and personal, and the assets belonging to The United Eight Oil Trust, George W. Bilbo and W. Baker Saulsbury, situated upon the southwest quarter of Section 177, Block B–2, H. & G. N. Ry. Co. Survey, Gray County, Texas, in the possession of W. Baker Saulsbury, or any other party possessing any of said property belonging to the United Eight Oil Trust, George W. Bilbo or W. Baker Saulsbury, and which was purchased for use at and upon said land in the drilling of the well now located thereon, with the sole exception of such individual property belonging to W. Baker Saulsbury, which does not constitute any part of the assets of the United Eight Oil Trust, George W. Bilbo, or the alleged partnership between W. Baker Saulsbury and the United Eight Oil Trust, and that he take immediate possession and charge of all of said properties and assets belonging to said parties, or any of them, and used for the purposes aforesaid, and to hold same intact under the orders of this court during the pendency of this suit, and the trial upon its merits, and with full power and authority and instruction to demand and collect from any and all persons, the pipe line company or individuals owing George W. Bilbo, the United Eight Oil Trust or W. Baker Saulsbury jointly with said named parties, any oil runs or moneys derived from the sale of oil or gas heretofore produced and sold from said well, and any equipment heretofore sold to anyone from the above described premises where the well is located which belong to said parties jointly, said receiver to have full

power and authority to at once commence operations for the cleaning out of the well located upon said property, on the condition, however, that before said operations are commenced that said receiver shall confer with the court regarding any expenditure to be made by him in the cleaning out of the same, and secure and obtain from the court an approval of such expenditure, and as soon as the same shall have been cleaned out, to immediately report, in writing, the result thereof to the court, as well as the expenses incurred in so doing, and the amount of money, if any, paid out on account thereof. That such receiver shall do only such other acts as may be specifically authorized by an appropriate order of the court first being made and entered of record in this cause."

The said receiver Gilchrist gave bond and entered upon the performance of his duties. From this order appointing Gilchrist there was no appeal.

Defendant Saulsbury, on the 11th of July, 1929, made application to the court to have the receiver sell certain property, which application was by the trial court denied.

On the 30th of September, 1929, E. Bass Clay, intervener, filed his motion to reopen the receivership proceedings and to have another receiver appointed. This motion the court granted, and appointed C. M. Lyon as receiver, who qualified under the court's order. The trial court's order was for the receiver to take immediate possession of the property described in the order appointing Gilchrist in the first instance, and:

"To hold same intact under the orders of this court during the pendency of this suit and the trial upon its merits, with full power and authority and instruction to demand and collect from any and all persons, the Prairie Pipe Line Company or individuals owing George W. Bilbo, the United Eight Oil Trust or W. B. Saulsbury, jointly with said named parties, any oil runs or money derived from the sale of oil or gas heretofore produced and sold from said well and any equipment heretofore sold to anyone from the above described premises where the well is located which belongs to said parties jointly, said receiver to have full power and authority to at once go into the possession of said property, examine and investigate the same, examine, investigate and inspect said well to determine whether or not the same could be cleaned out, drilled deeper or in any way made to produce oil in paying quantities and to ascertain the cost and expense of cleaning out or drilling said well deeper and the cost and expense of doing whatever such receiver might think necessary to make such well produce oil in paying quantities and report to the court the result of such investigation and the cost and expense within thirty (30) days from the date of this appointment.

"It is ordered, adjudged and decreed by the Court that no expense be incurred by said receiver until such investigation and report is made and that such report be made in writing and that such receiver do only such acts as may be specifically authorized by an appropriate order of this court first being made and entered of record in this cause."

From the interlocutory order so opening the receivership and appointing Lyon as receiver, the defendant Saulsbury has appealed to this court.

The questions we shall discuss are: (1) Whether or not the trial court erred in consolidating the cases. (2) Did the intervener E. Bass Clay allege such facts as entitled him to intervene in the pending suit No. 1899 and show himself entitled to have a receiver of the properties appointed for the purpose of having his interest in such property preserved and protected. These questions are so related that they will be discussed as one.

The appellant Saulsbury contends that the suits were wrongfully consolidated, because in all of the suits, except the suit of E. Bass Clay, the plaintiffs base their causes of action upon indebtedness on accounts for merchandise, lumber, etc., and on claims or priority of liens upon the property in controversy. On the other hand, the suit of intervener Clay is an action of trespass to try title and an equitable action for cancellation of the oil and gas lease covering the land above described, because of the lessees' abandonment of the lease.

The intervener Clay's petition of intervention, as stated above, consisted of a formal action of trespass to try title and an equitable action for the cancellation of the lease in controversy. So far as the decision of the question presented on this appeal, it is not necessary to set out the lengthy pleading in detail, but it is sufficient to set out the character of the pleading of intervener Clay and to make a brief statement of a few of the allegations thereof, for our holdings to be understood.

The intervener Clay's petition shows that he is the owner of a one-eighth royalty in the oil and gas produced from the land in controversy; that on the 9th of December, 1927, intervener and wife executed and delivered to W. W. Merton, as lessee, an oil and gas lease covering the land above described, conveying to said Merton a lease for a certain term of years; that said Merton afterwards conveyed said oil and gas lease so that said leasehold estate vested in W. B. Saulsbury. Further, the petition of intervener Clay alleges:

"This intervener would further show that the defendants, W. B. Saulsbury and George W. Bilbo are claiming some right, title and interest in and to the land and premises set out and described herein, and which are the same land and premises described in the

plaintiff's petition and upon which the plaintiff and the defendants and interveners are seeking to subject to the various rights and liens claimed, under the said Saulsbury and Bilbo, by virtue of a gas and oil lease executed by this intervener to W. W. Merton, dated December 7th, *1929*, and recorded in Vol. 37, Page 161, of the Deed Records of Gray County, all of which was thereafter assigned by the said Merton to W. B. Saulsbury on the 1st day of May, 1928, by a written assignment recorded in Vol. 39, Page 411, of said Gray County Deed Records.

"That thereafter and prior to the rights of the plaintiff, International Supply Company, or any of the defendants or interveners herein accrued, if the same did so accrue, the said W. B. Saulsbury fraudulently represented to this intervener that he intended to proceed immediately to drill for oil and gas on said S. W. ¼ of Sec. 177, and to develop said minerals and gas on said land and to drill such well and offset wells as were necessary to fully develop said lease, but that he could not do so unless this intervener would release him from the provisions of the rental payment provided in the lease contract given to the said Merton and execute and deliver to the said Saulsbury a commercial oil and gas lease on additional land in the vicinity of the said lease.

"That this intervener did believe the said Saulsbury as to such representations and was thereby induced to release the said Saulsbury from the provisions of said lease and did execute and deliver to the said Saulsbury a five year commercial oil and gas lease on and concerning the north half of the S. W. ¼ of Section No. 176, and the S. ½ of S. ½ of N. W. ¼ Sec. 176, Block B–2, H. & G. N. Ry. Co. lands in said County, said lease being recorded in Vol. ——, Page ——, of the Deed Records of Gray County, Texas.

"That all of the statements and representations, so made by the defendant, Saulsbury, were false and untrue and the said Saulsbury did not intend to develop and produce the oil and gas under and on said land, but merely intended to prospect and determine whether or not such land contained oil and gas in commercial quantities in order that he might sell and convey said lease to others who did not want said oil and gas developed thereon.

"That the said Saulsbury at the time of the representations so made did make a written contract providing for the immediate full development of an oil and gas well on said land and such additional wells and offsets as might be necessary to such development on said S. W. ¼ of Sec. 177, which contract fully abrogated the provisions of the original lease so assigned to him by the said Merton and did substitute therefor the representations and promises herein alleged. However, after this intervener had executed and delivered to said Saulsbury the oil and gas lease on a part of section 176, the said Saulsbury failed to deliver to this intervener the contract so made and executed.

"That the plaintiff herein, the said International Supply Co., and each and all of the other parties to this cause, to-wit: T. E. Stennett, George W. Bilbo, United Eight Oil Trust, W. Baker Saulsbury, I. Rudman, Seis Machine Co., a partnership composed of A. C. Seis and E. M. Jameson, Gibson Supply Company, each and all had full knowledge and notice of the fraud of the said W. B. Saulsbury prior to the accrual of any right in or to the property described herein and with full knowledge of the invalidity of the lease of the said Saulsbury in and to said oil and gas on said land.

"As further pleading herein, this intervener adopts all of the allegations in the plaintiff's original petition filed in cause No. —— now pending in this court wherein this intervener is plaintiff and George W. Bilbo and W. B. Saulsbury are defendants, a copy of which is hereto attached and made a part hereof as fully as if alleged herein."

In the motion of intervener Clay to reopen the matter of receivership and for the appointment of a receiver, it is alleged:

"This intervener would further show that all of the necessities existing at the time of his appointment for so doing, as set out in the application, still exist.

"This intervener would further show that the property described in said application and appointment is greatly depreciating in value and the revenue which the oil well thereon would produce is being lost to all of the parties concerned in this suit by the failure to have said well cleaned out and operated. That by reason of this litigation, none of the parties are able to proceed with the operation of said well. That this intervener is entitled to one-eighth of all of the production from said oil well and by reason of the various liens filed hereon and the prevention thereby of the drilling and operation of said well this intervener is being deprived of his said one-eighth of the oil so produced."

Upon the question of consolidation of suits, article 2160, Rev. Civ. St. 1925, provides: "Whenever several suits may be pending in the same court, by the same plaintiff, against the same defendant, for causes of action which may be joined, or where several suits are pending in the same court, by the same plaintiff, against several defendants, which may be joined, the court in which the same are pending may, in its discretion, order such suits to be consolidated."

Article 1998, Rev. Civ. St. 1925, in the matter of pleas of intervention in a pending suit, provides: "Any party may intervene in vacation, subject to be stricken out by the court

for sufficient cause at the next term on the motion of the opposite party; and such intervenor shall, within five days from the filing of same, notify the opposite party or his attorney of the filing of such pleadings. When court is in session such pleadings shall be filed under the rules governing amendments to pleadings. So far as applicable, pleadings of an intervenor shall conform to the requirements of pleadings of the plaintiff and defendant respectively."

In the consolidated case at bar, as stated, the intervener Clay filed his plea of intervention in cause No. 1899, containing substantially the allegations above noted, on September 25, 1929. Thereafter he filed a separate suit in said court on the 22nd of December, 1929, in which he alleged his cause of action substantially as alleged in his plea of intervention in cause No. 1899.

▇▇ Article 1998, supra, provides that such plea of intervention filed in vacation is subject to be stricken out on motion of the opposite party. Such a motion was not made in this cause. Not having made such motion, the defendant waived his right to strike out Clay's intervention, and he cannot now challenge the court's action in permitting the intervention. This being true, no injury is shown in the court's consolidation of the cases, as the intervener's cause of action was safely lodged there and before the court for trial.

We do not want to be understood as holding that the trial court committed an error in ordering the consolidation of the cases. While the plaintiffs base their suits in the separate actions filed by them upon accounts for merchandise or for labor performed, they were seeking to foreclose liens upon the oil and gas lease in controversy. The intervener Clay was practically resisting their efforts to do so by a proceeding in which he was attempting to cancel the very lease they were trying to foreclose their liens upon. All suits were with reference to the same subject-matter, that is, the lease. Clay's suit, it is true, in the event he was successful, would defeat the plaintiffs' causes of action upon their accounts by canceling the lease upon which they were seeking to foreclose such liens. But the common subject-matter of all the suits was the leasehold estate, so far as Clay was concerned.

In view of the intervention of Clay in cause No. 1899, with the suit filed later by Clay, no possible injury could have been caused the defendant Saulsbury by the consolidation. The law does not favor useless litigation. A foreclosure of the constitutional and statutory liens upon the leasehold estate would have been useless litigation in the event that Clay was successful in his suit to cancel the lease and it was proper to determine the matters in one suit.

In the case of Jones v. Ford, 60 Tex. 127, 129, where a recovery was sought upon a moneyed demand, together with a suit for the possession of real estate, and that of a moneyed demand with a suit to cancel a lien claimed upon the property, the Supreme Court held that there was no misjoinder because the several causes of action grew out of the same transaction and were so intimately blended with each other that it was almost impossible to have a complete settlement of one without involving a consideration of the others. See, also, 1 Tex. Jur. 679, § 61.

It has also been held that the consolidation of actions is a matter resting largely in the judicial discretion of the court, which will not be disturbed on appeal in the absence of a clear abuse of such discretion and of prejudice to the appellant. 1 Tex. Jur. 677, § 60, and authorities cited.

The suit numbered 1899, which was pending and in which Clay intervened, would enable the court to have disposed of the litigation, and the consolidation of the suits could not have caused the defendant Saulsbury any injury.

▇▇ Under the allegations of the intervener Clay's petition and motion, it is clear that he was entitled to the appointment of a receiver pending the litigation in order to preserve and protect the property.

Even where an oil and gas lease does not require immediate development, the Austin Court of Civil Appeals holds that, if it appeared that there might or would be drainage from the leased territory, the royalty owner had no adequate remedy at law, and could have a receiver appointed. United North & South Company v. Meredith (Tex. Civ. App.) 258 S. W. 550, 555. Affirmed in (Com. App.) 272 S. W. 124. However, under subdivision 1, where the ground is that the property was in danger of being lost or destroyed, such allegation cannot be attacked on the theory that plaintiff had an adequate remedy at law, the proceedings being based on the statute and not on general principles of equity. Richardson v. McCloskey (Tex. Civ. App.) 228 S. W. 323.

Under article 2293, Rev. Civ. St. 1925, receivers may be appointed by the court:

"1. In an action by a vendor to vacate a fraudulent purchase of property; or by a creditor to subject any property or fund to his claim; or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff or any party whose right to or interest in the property or fund or the proceeds thereof is probable, and where it is shown that the property or fund is in danger of being lost, removed or materially injured. * * *

"4. In all other cases where receivers have heretofore been appointed by the usages of the court of equity."

In construing this statute, the Commission of Appeals, in the case of United North & South Oil Co. v. Meredith, 272 S. W. 124, 125, says: "As cotenants, Meredith, Coopwood, and Richards had the right to go upon the land, drill offset wells, and save for themselves and the oil company the oil which otherwise would be lost, if they were financially able and possessed the skill and ability to do so. The production of oil requires considerable financial ability. Not being able to do this, it would be necessary for them to make some arrangement whereby it could be done in order to prevent loss and consequent injury to the oil and gas estate. They made an effort to have the oil company join them in some plan to develop the property and prevent the oil and gas from being drained from under the land, and it refused to join them. The mere fact that the title to the oil was in dispute was an impediment to development. No responsible concern was willing to undertake the task of saving for the owners the oil and gas under this land, for the reason that it was involved in litigation. No arrangement to save the oil and gas could be made until this hazard was removed. The question here presented is whether a court of equity can intervene to protect the interests of all the owners until the question of ownership can be determined."

In the case at bar, it is shown by the pleadings that a well had been drilled that had produced some oil; that the lessees had plugged it and to all intents and purposes had abandoned that particular well; that they had refused to proceed further in the drilling; that the lease was involved in litigation; that the lessees were not financially able to drill other wells, or at least in face of the litigation Saulsbury did not choose to do so; that the lease had no prospect of development; and that by the failure of the proper development the intervener Clay was being deprived as the royalty owner of his one-eighth interest therein; and that it was likely to materially affect his interest in the lease.

We therefore hold that the trial court did not err in the appointment of a receiver, and accordingly we affirm the trial court's judgment.